W. C. PENNELL, TRUSTEE IN BANKRUPTCY, v. L. W. ROBINSON
AND M. M. WORLEY, INDIVIDUALLY, AND AS PARTNERS, DOING BUSI-
NESS AS ROBINSON & WORLEY.

(Filed 13 December, 1913.)

1. Vendor and Vendee—Sales—Merchandise in Bulk—Void Trans-
   actions—Interpretation of Statutes.
      Where the provisions of chapter 623, Laws 1907, regulating
   the sale of the whole or a large part of a stock of merchandise
   other than in the usual course of the seller's business, have not
   been complied with, in making a sale of this character, as to
   giving notice to creditors, making inventory or giving bond, etc.,
   the sale is absolutely void, the question of *bona fides* in the
   transaction arising only when the conditions of the statute are
   met.

2. Bankruptcy — Partnership Exemptions—Consent of Partner—Ju-
   risdiction.
      Where one has been adjudicated a bankrupt under the laws
   of the United States, his right to homestead and personal property
   exemption under State laws is to be adjudicated in the bank-
   ruptcy court.

APPEAL by plaintiff from *Bragaw, J.*, at August Term, 1913,
of BUNCOMBE.

Civil action tried upon these issues:

1. Did the defendants purchase the stock of merchandise of
M. J. McElreath & Son otherwise than in the ordinary course
of trade and the usual prosecution of their said business, while
they were indebted to various creditors, without giving any no-
tice of said purchase and sale to said creditors?  Answer: Yes.

2. Did the defendants purchase said goods in good faith and
for a fair price, paying for the same, without knowledge of the
insolvency of said M. J. McElreath & Son, or that they owed
debts?  Answer: Yes.

3. What was the value of said goods at the time of said sale
on 7 March, 1912?  Answer: $268.

4. Are the defendants indebted to the plaintiff, and if so,
in what amount?  Answer: No.

Fourth issue answered "No" as a matter of law by the court.

It is agreed that upon application of C. H. McElreath, one of the bankrupts, for a personal property exemption, in the bankruptcy court, he was denied his personal property exemption. The other bankrupt did not ask for his personal property exemption or consent in apt time for C. H. McElreath to have any exemption. Upon the issues as found by the jury, the court rendered judgment against the plaintiff, who excepted and appealed.

*Mark W. Brown for plaintiff.*
*Lee & Ford for defendants.*

BROWN, J. This is an action brought by the plaintiff as trustee in bankruptcy of M. J. McElreath & Son, bankrupts, to recover possession of, or the value of, the stock of merchandise sold by M. J. McElreath & Son to the defendants.

It is admitted that the defendants purchased the stock of goods at the time plaintiffs were indebted to various creditors, without a compliance with the provisions of the statute regulating "sales in bulk," and that they paid a fair price for the same; that the same was purchased in good faith, and without legal knowledge or notice of the insolvency of the bankrupts, or that the bankrupts owed debts, at or before the time of the sale or the delivery of the goods. The only question presented is the construction of the "sale in bulk" statute.

The statute is chapter 623, Laws 1907, and is brought forward in Pell's Revisal, sec. 964a.

The plaintiff contends that under the "sale in bulk" law, the sale of the whole or a large part of a stock of merchandise otherwise than in the regular course of the seller's business is void, absolutely, as to the seller's creditors, unless he shall observe the provisions of the statute as to giving notice to creditors, making inventory or giving bond as provided in said act.

The defendants maintain that a failure to observe the provisions of the statute as to the notice to creditors or bond does not render the transaction void, but merely raises a presumption of fraud which may be rebutted by proof that (*a*) they pur-

chased in good faith, (*b*) paid a fair price, (*c*) and were without knowledge of the fraud or of the insolvency of the bankrupt.

We think the construction of the statute contended for by the defendants would practically destroy its beneficial effect. Its purpose is to prevent the purchase of a stock of merchandise from various persons on a credit, and then selling it out in bulk for the purpose of defeating the rights of the creditors who extended the credit.

The statute effectually protects such creditors not only by making it easier to establish fraud, but by declaring the "sale in bulk" absolutely void unless the provisions of the law are complied with.

As we construe the act, the sale in bulk of a large part, or the whole, of a stock of merchandise, otherwise than in the ordinary course of trade, and in the regular and usual prosecution of the seller's business, renders the transaction *prima facie* fraudulent, and open to attack on such ground by creditors, even though the provisions of the act are fully complied with.

But in case they are not complied with, then the "sale in bulk" is absolutely void as to creditors, without any further evidence of a fraudulent purpose.

The construction contended for by the defendants, if allowed to prevail, not only renders the act nugatory, but gives to the creditor no greater protection than he had prior to its enactment.

A sale in bulk of a stock of merchandise was *prima facie* evidence of fraud under some circumstances before the passage of this act.

The Supreme Court of the United States, in referring to such a sale, says: "But it is wholly a different thing when he sells his entire stock to one or more persons. This is an unusual occurrence, out of the ordinary mode of transacting such a business, is *prima facie* evidence of fraud, and throws the burden of proof on the purchaser to sustain the validity of his purchase." *Scammon v. Cole,* 5 Bank Reg., 257; *Graham v. Stark,*

3 Bank Reg., 95; *Kingsbury v. Hale,* 3 Bank Reg., 84; *Driggs v. Moore,* 3 Bank Reg., 149; *Tuttle v. Traux,* 1 Bank Reg., 169.

If the defendants had known of the insolvency of McElreath, and that the sale of the stock of merchandise to them was for the purpose of defeating the rights of creditors, then the sale could have been avoided irrespective of bankruptcy or of the "sale-in-bulk" law, even though appellees paid full value for the merchandise. Revisal of 1905, secs. 960-964; *Cox v. Wall,* 132 N. C., 730.

Any other construction than the one we place on the act of 1907 would leave the law practically as it stood under the Revisal of 1905, secs. 960, 964, for under that law, as demonstrated by *Mr. Justice Walker,* the burden of proof is on the purchaser of property conveyed to defraud creditors to show that he bought for a valuable consideration and without notice. *Cox v. Wall,* 132 N. C., 731.

The act of 1907 declares in explicit and unmistakable terms that such sales are (*a*) *"prima facie* evidence of fraud, and (*b*) void as against the creditors of the seller."

There must have been some purpose in inserting the comma after the declaration *"prima facie* evidence of fraud," and adding "and void as against the creditors of the seller."

But if the construction contended for by the defendant is adopted, the words "and void as against the creditors of the seller" must be stricken from the statute. The General Assembly will then have done a vain thing, and the purpose of the enactment destroyed.

In construing a similar statute, the Supreme Court of Mississippi in *Dry Goods Co. v. Rowe,* 99 Miss., 30, held that "a sale in violation of the bulk sales law, declaring that sale of a stock of merchandise in bulk shall be presumed to be fraudulent as against the seller's creditors, unless specified conditions are complied with, is *prima facie* fraudulent, and unless the purchaser shows a compliance with the conditions as to inventory and notice to creditors, the sale is *absolutely void,* the word presumed having no fixed meaning, and in one instance the pre-

sumption declared may be only *prima facie,* while in another conclusive." See, also, *Contrell v. Ring,* 125 Tenn., 480.; *Jacques v. Warehouse Co.,* 131 Ga., 15.

It is well known that the business of retailing goods, wares, and merchandise is conducted largely upon credit, and furnishes abundant opportunity for the commission of fraud upon creditors, not usual in other classes of business. Therefore, many other States have adopted similar statutes, the purpose being to provide in general protection against a class of sales to which fraud most frequently attaches. Such statutes have received different constructions by the courts of the several States, depending largely upon the language employed in the act. We will not undertake to review the various decisions. They are referred to, and the different views taken by the courts commented on, in that valuable publication, vol. 28, Am. and Eng. Annotated Cases, pages 1214-1216.

We prefer to adopt the view taken by several of the courts construing such statutes, to the effect that, while these statutes have the object to prevent persons in debt who own stocks of merchandise from selling the same in bulk for the purpose of defrauding their creditors, its subject-matter is not fraud in such sales, but the regulation of them.

The statute prescribes certain duties which must be performed by the buyer and certain correlative duties which must be performed by the seller. This is regulation, pure and simple.

Unless these duties are complied with, and the requirements of the statute observed, such sale or transfer, as to any and all creditors of the vendor, is conclusively presumed to be fraudulent in law, whatever it may have been in fact.

Whether McElreath is entitled to a personal property exemption now is a question for the bankruptcy court. It is well settled in this State that a copartner is not entitled to a personal exemption in the partnership property without the consent of the other copartner.

We are of opinion that the plaintiff is entitled to judgment for the value of the merchandise as assessed by the jury. Let such judgment be entered in the Superior Court.

Reversed.