GALLUP & CO., INCORPORATED v. J. B. ROZIER ET AL.

(Filed 18 October, 1916.)

**1. Vendor and Purchaser—Merchandise in Bulk—Statutes—Burden of Proof.**

Under our statute the sale of a stock of merchandise, in large part or as a whole, in bulk, is prima facie evidence of fraud, and renders the transaction void, unless the seller has complied with the statutory requirements as to inventory and notice to his creditors, with the burden on him to show that he has done so. Gregory's Suppl. to Pell's Revisal, sec. 964a.

**2. Same—Instructions—Appeal and Error.**

In an action to set aside the sale of a stock of merchandise in bulk (Gregory's Suppl. to Pell's Revisal, sec. 964a) as void against creditors, it is for the jury to determine the fact as to whether the seller had complied with the statutory requirement as to invoice, notice to creditors, etc., upon his evidence that he had done so, under proper instructions from the court; and a charge in effect that if he had failed in this respect the transaction was prima facie fraudulent, and not that it was void, is reversible error.

**3. Vendor and Purchaser—Merchandise in Bulk—Statutes—Burden of Proof —Trials—Evidence—Questions for Jury.**

The burden of proof on the affirmative of the issue as to fraud in the sale of a stock of merchandise in bulk remains with the plaintiff in this action to set it aside, even if the seller had complied with the statute (Gregory's Suppl. to Pell's Revisal, sec. 964a), as in that case the sale in bulk is still prima facie evidence of fraud under the statute, leaving it for the jury to determine the ultimate fact of fraud, upon the evidence.

**4. Vendor and Purchaser—Merchandise in Bulk—Statutes—Time of Notice— Definition.**

The statutory requirement that the seller of a stock of merchandise in bulk shall give notice thereof to his creditors "within seven days" is interpreted to mean that such notice may be given at any time within the number of days specified.

**5. Attorney and Client—Authority to Act—Ratification.**

Where a defendant in an action in the court of a justice of the peace afterwards, in the Superior Court, on appeal, ratifies, by his conduct, the acts of an attorney who had assumed to appeal for him, it is equivalent to his having given original authority to the attorney.

CIVIL ACTION tried before *Daniels, J.*, and a jury, at May Term, 1916, of CUMBERLAND.

The record shows that plaintiff brought this action in the court of a justice of the peace to recover of defendant J. B. Rozier a debt of $151.56 for goods sold and delivered, and sued out an attachment which

was on 27 September, 1915, levied on certain personal property of defendant, being the stock of goods and machinery in his garage at Fayetteville. N. C. Defendant on 17 September, 1915, had agreed to sell the stock of goods in bulk to W. W. and T. H. Sutton, who were partners and as such owned and conducted a garage in said city. There was evidence which tended to show that J. B. Rozier on 17 September, 1915, made an inventory of the stock of goods and notified his creditors, among them the plaintiff, that he intended to sell his stock of goods in bulk to Sutton & Sutton, and that on 25 September, 1915, he did sell the same to them, giving a bill of sale therefor, which was duly registered, or filed for registration, on 25 September, 1916. Sutton & Sutton intervened as claimants of the property under the bill of sale. Plaintiff alleged that defendant J. B. Rozier had concealed himself to avoid the service of process, or was about to assign his property with intent to defraud his creditors, and that the sale of the stock of goods in bulk was void as against them. Defendant and Sutton & Sutton, intervenors, denied this allegation. There was evidence which tended to show that J. B. Rozier did not actually intend to defraud his creditors when he made the bill of sale or contracted to sell the stock and gave notice of it to his creditors.

The court charged the jury as follows, only two instructions being sent up.

"1. The burden is upon the intervenors to establish their title to the property involved in this controversy. Upon the issues involving the question of fraud, as raised in the second issue, which is submitted to you, if you should find from the testimony that the bill of sale was executed without complying with the terms of the statute, the law would raise the presumption that it was done for the purpose of defrauding creditors, and the burden would be upon the defendant Rozier to satisfy you that it was done in good faith. If you find from the greater weight of the testimony that an accurate and fair inventory was taken of the property, that the price realized from the sale to Sutton & Sutton was a fair price, and that the full amount realized from said sale was credited on the mortgages held by the National Bank, then you will answer the issue as to fraud 'No.'

"2. If the jury should find that the defendant Rozier executed the bill of sale under which the interpleaders claim, with intent to defraud his creditors, then the interpleaders would not be the owners of the property; therefore, if you answer the second issue 'Yes' you will answer the third issue 'No.' Of course, as I stated to you at the outset, if you should find that the bill of sale was not made in compliance with the statute which I read to you, then this would be prima facie evidence

of fraud. But if you find from the greater weight of the evidence that the bill of sale from Rozier and Sutton was executed in good faith, that it described the property attached by the plaintiff in this action, that the price obtained was a fair and adequate one, that the proceeds of the sale were applied to Rozier's mortgages to the National Bank, then you will answer the second issue 'No' and the third issue 'Yes.' "

The jury returned the following verdict:

1. Did the defendant J. B. Rozier keep himself concealed within the State for the purpose of avoiding service of process, the summons? Answer: "No."

2. Was the bill of sale executed in fraud of the creditors of J. C. Rozier? Answer: "No."

3. Are the interpleaders the owners of the property in controversy and entitled to the possession of it? Answer: "Yes."

Judgment was entered thereon, and plaintiff appealed.

*V. C. Bullard* for plaintiff.
*Rose & Rose* and *Robinson & Lyon* for defendants.

WALKER, J., after stating the case: There was an error in the charge to the jury which was prejudicial to the plaintiff. They were instructed that if the defendant J. B. Sutton, in making the sale of the stock in bulk, had not complied with the provisions of the statute the sale was prima facie fraudulent, whereas the statute declares that it shall be void. The jury may have found that he had not complied with the statute, and as the question then would be, under the instruction, if there was fraud in the transaction, with the prima facie presumption that there was, the jury might have found that there was no actual fraud, but that the sale was made in good faith with the intention to pay a valid debt to the bank out of the proceeds, as defendant testified was the case, and finding this to be true, they would naturally and even necessarily answer the second issue "No" and the third issue "Yes"; whereas, if the seller had not complied with the statute, their answer to the second issue should have been "Yes" and to the third issue "No," and they should have been so instructed by the court. The statute provides that "The sale in bulk of a large part or the whole of a stock of merchandise, otherwise than in the ordinary course of trade and in regular and usual prosecution of the seller's business, shall be *prima facie* evidence of fraud, and void as against the creditors of the seller, unless the seller, at least seven days before the sale, make an inventory showing the quantity and, so far as possible, the cost price to the seller of such articles included in the sale, and shall within

said time notify the creditors of the proposed sale, and the price, terms, and conditions thereof." Gregory's Suppl. to Pell's Revisal, p. 962, sec. 964a. This statute has been construed by this Court in *Pennell v. Robinson,* 164 N. C., 257, and its meaning clearly defined. "We think," says *Justice Brown,* "the construction of the statute contended for by the defendants would practically destroy its beneficial effect. Its purpose is to prevent the purchase of a stock of merchandise from various persons on a credit, and then selling it out in bulk for the purpose of defeating the rights of the creditors who extended the credit. The statute effectually protects such creditors not only by making it easier to establish fraud, but by declaring the 'sale in bulk' absolutely void unless the provisions of the law are complied with. As we construe the act, the sale in bulk of a large part, or the whole, of a stock of merchandise otherwise than in the ordinary course of trade, and in the regular and usual prosecution of the seller's business, renders the transaction prima facie fraudulent, and open to attack on such ground by creditors, even though the provisions of the act are fully complied with. But in case they are not complied with, then the 'sale in bulk' is absolutely void as to creditors, without any further evidence of a fraudulent purpose. The construction contended for by the defendants, if allowed to prevail, not only renders the act nugatory, but gives to the creditor no greater protection than he had prior to its enactment. A sale in bulk of a stock of merchandise was prima facie evidence of fraud under some circumstances before the passage of this act." And again: "The statute prescribes certain duties which must be performed by the buyer and certain correlative duties which must be performed by the seller. This is regulation, pure and simple. Unless these duties are complied with, and the requirements of the statute observed, such sale or transfer, as to any and all creditors of the vendor, is conclusively presumed to be fraudulent in law, whatever it may have been in fact."

The evidence is not such as permits us to assume any fact to have been proven. The burden was upon the defendant to show that he had complied in all essential particulars with the requirements of the statute, and it was for the jury to say, under proper instructions of the court, whether he had so done. The credibility of his testimony as to what he did was a question of fact for the jury to settle. He testified that he did make an inventory and did give the notice; but whether he did so or not, and what kind of inventory was made and notice given, and the further question whether what he did was in compliance with the statute, were, as we have indicated, all matters for the jury to consider and decide, according to the evidence and the law as stated to them by the court.

The statute calls for a certain kind of inventory and prescribes how the creditors shall be notified. The court should have instructed the jury, as to these things, that they might understand what the legal requirements of the statute as to inventory and notice were, and so that they could determine in the light of the evidence the question submitted to them, whether such an inventory had been made and the proper notice had been given. The instruction given was not a proper construction of the statute, as we have shown, and, therefore, was calculated to mislead the jury as to the law of the case. If the parties had admitted all the facts as to inventory and notice, and it appeared to us that there had been a compliance with the statute, we might hold the error in the charge to be harmless; but such is not the case, and the whole matter depends upon the finding of the jury under the evidence, the inference from which they must draw, and the truth of which they must pass upon.

The defendant testified that he made a full and complete inventory. The jury were not bound by this statement of the witness to find that he did make such an inventory. This was one of the facts in issue, with the burden upon defendant to prove a strict compliance with the statute, which requires that the inventory, to be made seven days before the sale, shall show the quantity (of the stock), and, so far as possible, the cost price to the seller of such articles as are included in the sale; and, further, that the seller "shall within said time notify the creditors of the proposed sale, and the price, terms, and conditions thereof."

It will be seen that there are details to be observed with respect to both inventory and notice, and we are unable to say with certainty, and without the risk of doing injustice to one or both of the parties, how the jury have found regarding them, or those of them which are essential. If the defendant has not complied with the statute, the sale is void; but if he has, it is still prima facie fraudulent, and the question of the presence or absence of fraud in the transaction must go to the jury, with the burden resting upon the defendant, because such a sale of a stock in bulk is prima facie evidence of fraud, and he must go forward with his proof, or take the chance of an adverse verdict. He is not bound to disprove the existence of fraud by the preponderance of the evidence, as the burden of establishing fraud, or the burden as to the affirmative of the issue, remains with the plaintiff, who has only the advantage of the law that the mere fact of such a sale having been made is itself prima facie evidence of fraud. It is like the doctrine with respect to res ipsa loquitur, so well stated by Justice Pitney in Sweeney v. Erving, 228 U. S., 233, which we may follow, with such changes in phraseology as the formal difference between the two cases may require. Evidence prima facie means that the fact of oc-

currence warrants the inference of fraud, not that it compels such an inference; that it furnishes circumstantial evidence of fraud where direct evidence of it may be lacking; but it is evidence to be weighed, not necessarily to be accepted as sufficient; that it calls for explanation or rebuttal, not necessarily that it is required; that it may make a case to be decided by the jury, not that it forestalls the verdict. Prima facie evidence, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff. Such, we think, is the view generally taken of the matter in well considered judicial opinions. That case was approved by us in *Ridge v. R. R.*, 167 N. C., at p. 518, citing, also, *Stewart v. Carpet Co.*, 138 N. C., 60, and other decisions of this Court upon the same subject. It may be that the defendant has fully complied with all necessary details, as to inventory and notice, but we cannot say so judicially, for we do not deal with the evidence in cases of this sort, it being solely within the province of the jury to do so.

It would seem, though, that the evidence as it now is, and provided the jury believe it, tends to prove that the sale was made in good faith and without any intent to defraud creditors, and for the fair and honest purpose of paying a debt or debts having a prior lien. The jury must say how this is, unhampered by an expression of opinion from us. We merely say that there is evidence of good faith in the transaction. But good faith and fair dealing of defendant will not help the intervenors if the statute was not complied with; and even if it was, the entire evidence must be submitted to the jury, with proper instructions as to the *prima facie case,* so that they may find the ultimate fact of fraud or no fraud.

We are of the opinion that the words of the statute, "within said time" (seven days), do not mean that the notice shall be given for the full period. The word within, when used to designate time or place or quantity, is defined to mean "inside of," "not without," "not exceeding," and "not longer in time than." Construing the words, when employed in a connection similar to the one we have here, the Court in *Hoover v. Krider,* 30 Pa. (15 S. and R.), 43, said that the term did not mean not less than so many days, but at any time not more than the number of days mentioned; and this is the general understanding of the courts. 40 Cyc., 2127, 2128. The Court held in *Davis v. Miller,* 130 U. S., 284 (32 L. Ed., 932), that "A cause requiring an importer to give a certain notice within ten days after ascertainment and liquidation of the duties must, according to fair and reasonable interpretation of the words as applied to the subject-matter, be held to fix only the *terminus ad quem,*

the limit beyond which the notice shall not be given, and not to fix the final ascertainment and liquidation of the duties as the *terminus a quo,* or the first point of time at which the notice may be given. In the case at bar the result is that the notice on each entry, having been given after the collector's decision and before the expiration of ten days from the date of finally stamping upon the entry the ascertainment and liquidation of the duties, was seasonable." See, also, *Altherton v. Corloss,* 100 Mass., 40.

There was no error in the order refusing to dismiss the defendant's appeal from the justice of the peace. The attorney had assumed to act for him, and defendant afterwards ratified what he had done. This was equivalent to original authority to act, under the familiar maxim of the law.

The error in the charge requires that a new trial be had, and it is so ordered.

New trial.