The plaintiff, Armfield Company, alleged that the defendant C. A. Saleeby was indebted to them in the sum of $446.29 for goods sold and delivered, and that he, being a retail fruit dealer, had sold a large part of his stock in bulk to his codefendants, T. S. Saleeby Co., with intent to defraud the creditors of C. A. Saleeby, and contrary to the provisions of "Bulk Sales Law."
The suit was brought first in the recorder's court, and then carried by appeal from the judgment to the Superior Court. The jurisdiction of the recorder's court is restricted to actions on contracts not exceeding in amount five hundred dollars, and actions of tort where the amount does not exceed three hundred dollars.
The facts were, so far as admitted, that C. A. Saleeby had increased his stock of goods just before and during the Christmas holidays, and among other additions to his stock he had bought 179 barrels of apples in two lots, one of 100 barrels and the other of 79 barrels, and that he had afterwards sold them in the same way, that is, in two lots of 100 barrels and 79 barrels, about the same time, from the cars. There was much evidence as to the value of the stock varying from $1,500 to $5,000, the estimates though depending somewhat, it appears, upon the times they were made. It was admitted that both lots of the apples were worth $450. The court submitted it to the jury to find whether there had been a violation of the "Bulk Sales Law" upon all the evidence as to the value of the stock, the nature of the business, and other pertinent matters. The defendants asked the court to give this instruction to the jury:
"If the jury shall find that the usual stock of goods in the store of C. A. Saleeby was from $3,000 to $5,000, then the court charges you that the sale of 100 barrels of apples of the value of about $300 is not the sale in bulk of a large part, or the whole, of the (300) stock of merchandise of C. A. Saleeby, and you should answer the issue `No.' This is also true as to the 79 barrels of apples."
This instruction was refused, and the defendants excepted. It was admitted that defendants had not complied with the requirements of the "Bulk Sales Law" as to giving notice, etc.
The jury returned the following verdict:
Did the defendant C. A. Saleeby sell in bulk a large part of his *Page 321 
stock of merchandise, otherwise than in the ordinary course of trade and in the regular and usual prosecution of his business, without complying with the requirements of section 964a, Pell's Revisal, as alleged in the complaint? Answer: "Yes."
Judgment and appeal.
after stating the case: It having appeared that the property sold by C. A. Saleeby to his codefendants was worth more than the amount of his indebtedness to the plaintiff, the court gave judgment against both defendants for $446.29, which was the amount of the debt.
The court submitted to the jury, for their determination upon the evidence, the question whether the "Bulk Sales Law" had been violated, and refused to instruct the jury as requested by the defendant. This was error. The statute forbids the sale of a large part or the whole of a stock of merchandise, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the seller's business, without first complying with certain requirements therein specified as to notice, etc., and if they are not observed, declares that the sale shall be void, and even if they are, such a sale is made prima facie evidence of fraud. Fraud on creditors is the basis of this new remedy, in the one case the fact of noncompliance with the requirements of the statute is conclusive evidence of it, and the sale is void, and in the other it is prima facie fraudulent, and the evidence is referred to the jury upon which they may find the fact of fraud. Gallup v. Rozier, 172 N.C. 283; Pennel v. Robinson, 164 N.C. 257. The precise questions now before us were not present in theGallup v. Rozier case, which involved only the correctness of the charge, upon a different ground than the one taken in this case. The point here is whether the court should have given the instruction requested by the defendant. A sale is not forbidden by the statute unless it is of the whole or a large part of the stock, and we do not think that 10 per cent thereof constitutes a large part of this stock. There was evidence to support the prayer of defendants, for L. L. Greenwood, plaintiff's witness, testified that in ordinary times C. A. Saleeby carried a stock of goods worth $3,000 (301) or $4,000, and consisting of groceries, fruits, dry goods, notions and the like, and there was other like evidence sufficient, at *Page 322 
least, to justify the instruction. The stock during the approach of Christmas was increased in size and seems to have been at its maximum when the 179 barrels of apples were sold, so that the jury might well have found that the stock was worth, at that time, forty-five hundred dollars, and perhaps even more than that amount. If they had so found, and it being admitted that the apples were worth $450, it follows that they were worth only 10 per cent of the value of the stock, which in our judgment is not a large part thereof. It should be something more than that or nearer a half of the stock to come under the condemnation of the statute. No such question has been before this Court since the statute was passed, but it has been considered in the case of Fiske Rubber Co. v. Hayes Motor Car Co., 199 S.W. (Ark.) 96, and the Court held that a sale of 10 per cent of the stock by an automobile agency and accessories shop was not forbidden by the statute, which was substantially like ours, as it was not a sale of a large part of the stock. The Court conceded, as we decided in Gallup v. Rozier, supra, that such a stock as was sold there came within the words of the statute and a sale of it, or a large part of it, would be void if the requirements were not met by the seller. The syllabus of the Fiske Rubber Company case is as follows, and it correctly states accurately the point decided: "A sale by an automobile agency and accessories shop of goods aggregating approximately $150 out of an accessories stock of $1,500 to its successor in the agency, when the seller was about to move the accessories stock, is not a sale in bulk requiring compliance with the Bulk Sales Law." In the course of the opinion Judge Humphreys says: "The sale of items such as these in respect to value and quantity was not out of the ordinary in the conduct of the retail business in which they were engaged. . . . In the instant case only a small portion of the stock was sold. The number of items and value thereof were inconsequential when compared with the amount and value of the entire stock. The number of articles sold and the value thereof were within an ordinary retail transaction. Thompson Dalhoff were engaged in the retail business. It is manifest that the sale was not intended to impair a continuation of the Thompson Dalhoff automobile accessory business at some other location in the city. . . . . In order to constitute a fraudulent sale under the act it must appear that a material portion of the stock was sold in bulk, out of the ordinary course of trade and contrary to the regular prosecution of the business of the seller. The Chancellor found in the instant case that the sale was an ordinary retail transaction. We think the finding was supported by the weight of evidence. It certainly cannot be (302) said that the finding was contrary to a clear preponderance *Page 323 
of the evidence." We take it, therefore, that the court should have recognized this construction of the law and have given the instruction, at least in substance.
The defendant further contends that, as this action was originally brought in the recorder's court, the Superior Court only acquired the jurisdiction derivatively of the recorder's court, and could not amend the pleadings so as to change that jurisdiction or to enlarge it, and that it has attempted to do so by allowing the plaintiff to waive the tort arising out of the fraud, and to sue on contract. The jurisdiction conferred upon the recorder's court is limited to those cases of contract where the amount in dispute does not exceed $500, and in cases of torts, when it does not exceed $300, but within those limits the jurisdiction is quite broad and comprehensive. The Public-Local Laws of 1913, ch. 667, makes the jurisdiction of the recorder's court concurrent with that of the Superior Court (sec. 3, subsec. 2) in all civil actions, matters and proceedings founded on contract within the above limit, and the same provision is made in the case of torts; and by section 26 the procedure, with certain exceptions, is required to follow the rules and practice as set forth in chapter 12 of the Revisal of 1905, on Civil Procedure and Amendments thereto, in so far as the same may be adapted to the needs and requirements of said court, and any changes in the rules of procedure of the court are required to be published. We think the court had the power, under this act, to proceed against both defendants upon the supposition that the tort, if one was committed, had been waived, and that plaintiff had elected to sue in contract. The complaint, as originally framed, indicated clearly that this was the intention of the pleader, and we must construe it liberally. Rev., sec. 495; Blackmore v. Winders, 144 N.C. 215; Brewer v. Wynne,154 N.C. 467; Bank v. Warehouse Co., 172 N.C. 602. No one can read the complaint, with prayer for judgment, and not conclude that the plaintiff was waiving the tort and suing on the implied contract, as in indebitatusassumpsit. When the court allowed the amendment so as expressly to waive the tort, it did not substantially change the cause of action but simply amplified the statement so as to show more clearly and expressly what was implied or to be inferred from the complaint as already drawn. This was legitimate and proper. It was not the substitution of a new cause of action but a better pleading of the original one. Simpson v. R. R., 133 N.C. 95,98; Pickett v. R. R., 153 N.C. 148; Hockfield v. R. R., 150 N.C. 419;Gadsden v. Crafts, 175 N.C. 358. We said in the Simpson case, supra: "The general scope and purpose of this action, or what is sometimes called the *Page 324 
gravamen, the grievance or injury specially complained of, (303) were not changed by the amendment. . . . Amendments which only amplify or enlarge the statement in the original complaint are not deemed to introduce a new cause of action, and the original statement of the cause of action may be narrowed, enlarged or fortified, in varying forms, to meet the different aspects in which the pleader may anticipate its disclosure by the evidence," citing 1 Enc. Pl. Pr. 557-562.
We have held that in cases of fraud, where the person committing it has been thereby enriched to the damage or detriment of the other and innocent party, indebitatus assumpsit will lie against him, upon the ground that the law implies a promise on his part to restore what he has thus gained by the transaction. The subject is discussed in Keener on Quasi Contracts, pp. 318-325. We so decided in Sanders v. Ragan, 172 N.C. 612, where Justice Hoke treats the subject, and reviews the authorities with much clearness and discrimination, and concludes as follows: "The action of indebitatusassumpsit, as stated, is dependent largely on equitable principles (Mitchell v. Walker, 30 N.C. 243), and in the absence of a special contract controlling the matter, and unless in contravention of some public policy, it will usually lie wherever one may have been enriched or his estate enhanced at another's expense under circumstances that, in equity and good conscience, call for an accounting by the wrong-doer." The third syllabus is especially pertinent to this case: "When one's property has been wrongfully converted by fraud or deceit the owner is allowed to waive the tort and sue on an implied contract in the equitable action ofindebitatus assumpsit." It has also been held that, in equity, where one has acquired the property of another in fraud of the rights of a third party, and has disposed of the same so that it cannot be reached by execution or ordinary process, the court may render a money judgment against the fraudulent vendee for the value of the property so fraudulently converted. Sprinkle v. Wellborn, 140 N.C. 163-178, and cases cited. The law simply compels the vendee, who cooperated with his fraudulent vendor, to surrender what he has unfairly and unjustly received, and of which he has deprived the vendor's creditors, it being an asset of their debtor to which they are entitled to resort for the satisfaction of their claim.
It was decided in Whitmore v. Hyatt, 175 N.C. 117, where the property was alleged to have been sold in violation of the "Bulk Sales Law," that the creditors could recover of the buyer the value of the goods so sold by their debtor, who was the seller, citing Daly v. Drug Co., 127 Tenn. 412, and Martin v. Ringer, 91 S.E. (W.Va.) 386. The Daly case involved this very question. *Page 325 
The remaining objection of defendants is not one which they are in a position to set up, as the record shows that (304) they moved to dismiss the action because J. A. Nevin, trustee in bankruptcy, had not been made a party thereto, whereupon the court found that he had theretofore been made a party as interpleader, without objection, by order of Judge Lyon, and then ordered that he come in and be allowed to join with the plaintiff in the prosecution of the action. By not objecting at first defendants waived their right to object now. A defendant cannot ask that a party be brought in, and when it is so ordered, object because he is an improper party, for when the court has done what he has asked to be done he is in no position to insist that it be undone. But the trustee was a proper party under the circumstances to prevent further litigation. He claimed the entire fund as trustee for all the creditors, including the plaintiff, while the latter claimed only his proportionate part of it.Symons v. Reid, 58 N.C. 327; Vanhorn v. Duckworth, 42 N.C. 261;Ayers v. Wright, 43 N.C. 229; Kornegay Co. v. Farmers, etc.,Steamboat Co., 107 N.C. 115. The plaintiff is not objecting to the trustee being made a party or to his intervening. He is not claiming all of the fund but only his rateable part. The court must make parties in some cases, and in others it may add new parties. Rev., sec. 507. "It can very rarely happen," said the Chief Justice, "that making an additional party will be a serious prejudice, and hence such orders are usually discretionary, and not reviewable." Bernardv. Shemwell, 139 N.C. 446, citing Code, sec. 273; Tillery v. Candler,118 N.C. 889. Defendants cannot be prejudiced by making the trustee a party. It is rather beneficial to them, as they will be protected from another action by him, based upon his right to recover the money for the creditors generally, the fund to be administered in the bankruptcy proceedings. We have considered all the questions as there must be a new trial, for they would be raised again.
There was error in the charge, because of which a new trial is ordered.
New trial.
Cited: Rubber Co. v. Morris, 181 N.C. 186; Erskine v. Motors,185 N.C. 491; S. v. Washington, 234 N.C. 531; Burgess v. Trevathan,236 N.C. 159; Kramer Bros. v. McPherson, 245 N.C. 359. *Page 326 
(305)