THE RALEIGH TIRE AND RUBBER COMPANY v. E. W. MORRIS AND MARY DIVERS, TRADING AS THE MORRIS AND DIVERS COMPANY, AND J. P. AND C. T. MATTHEWS, TRADING AS MATTHEWS AUTO AND ELECTRIC COMPANY.

(Filed 6 April, 1921.)

**1. Sales in Bulk—Statutes—Police Powers—Evidence—Prima Facie Case.**

C. S., 1013, regulating the sale of merchandise in bulk, with certain requirements as to notice to creditors, inventories, etc., making such sales, contrary to the provisions of the statute, *prima facie* evidence of fraud and void as against creditors of the seller, is a valid exercise of the police powers of government, and such sale is to be regarded as *prima facie* fraudulent in the trial of an issue as to its validity.

**2. Same—Remedies of Creditors—Bona Fide Purchasers.**

When a sale of merchandise in bulk is avoided for noncompliance with the statute, C. S., 1013, the goods can be made available by direct process or levy and sale in the hands of the original purchaser, or such purchaser may be held liable for their value when they are disposed of by him, and either remedy is available to the creditors of the vendor against subsequent purchasers as long as the goods can be identified, or until they have passed into the hands of a *bona fide* purchaser for value without notice.

**3. Same—Identification of Goods—Subsequent Purchasers.**

The sale of merchandise in bulk is without the usual course of business, and affects the purchaser with notice of a defective title for noncompliance with the statute, C. S., 1013, as long as it can be identified and traced to any one to whom it has been transferred otherwise than in good faith and for a valuable consideration.

**4. Same—Dealers—Repairers.**

Where the dealer in automobile supplies has sold his stock of merchandise in bulk to those whose business it is to use such material in making repairs for their customers, the latter may not avoid liability to the creditors of the vendor on the ground that they were not dealers in such wares, under the doctrine announced in *Swift & Co. v. Tempelos*, 178 N. C., 487, for the sale of the original creditor is itself void for noncompliance with the statute, C. S., 1013.

RUBBER CO. *v.* MORRIS.

APPEAL by plaintiff from *Kerr, J.,* at second Civil Term, 1920, of WAKE.

The action is to recover of Morris-Divers Company a balance due for goods sold and delivered, and to hold defendant, the Matthews Auto Electric Company, and its members, J. P. and C. T. Matthews, liable by reason of having bought the stock of goods of the debtor, in violation of plaintiffs' rights, and when the statute applicable to sales in bulk of such stock had not been complied with. There were facts in evidence tending to show that defendant, the Morris-Divers Company, was a partnership in Lillington, N. C., engaged in the business of selling auto supplies, etc., and in July, August, and September of 1919 they bought of plaintiffs tires and tubes for resale in their business, to the amount of $1,040. That they have paid on said account $400, and an additional $50 since suit started, leaving a balance due of $590. That while said company was so indebted, they sold out their entire stock of goods to the amount of $800 and more, including some of those bought of plaintiff, to the defendant, the Matthews Company, a partnership composed of defendants, J. P. and C. T. Matthews, and without inventory made or notice given, or otherwise complying with the statute appertaining to sales in bulk, C. S., 1013. There was also testimony on part of plaintiff permitting the inference that the goods were placed with the Morris Company on consignment to sell at retail and render an account of proceeds to plaintiff at the end of each month, and that at least $200 of the goods in question were on hand at the time of the sale to the Matthews Company.

There was evidence for defendant tending to show that the Morris-Divers Company had bought the goods outright from the plaintiff company, and there was a balance due of $590.60. There was further evidence to the effect that C. T. Matthews alone composed the Matthews Company, and that J. P. Matthews was only an employee, otherwise having no interest in the business. That defendant bought the stock of the Morris Company, paying them about $800 therefor, and that there was included in the stock about $200 of goods sold to the Morris Company by plaintiff. That the Matthews Company ran a garage and dealt in oils, gas, tires, tubes, etc., but these last were only sold to customers or patrons who had their machines repaired at the shops, and as required for properly carrying on the work of such business. During the progress of the trial it appeared that there had been no service of process on Mary Divers, and a nonsuit was taken as to her.

On an issue submitted, the jury found the amount due plaintiff from E. W. Morris to be $590.60, and the court being of opinion that the sale to the Matthews Company did not properly come within the provisions of the sales in bulk law, and that no other reason for liability had been

shown, on motion, the case against the Matthews Company was dismissed, and judgment entered against Morris for the balance of plaintiff's debt as declared in the verdict.

Plaintiff·excepted and appealed.

*Evans & Eason for plaintiff.*
*Rose & Salmon for defendants.*

HOKE, J., after stating the case: The sales-in-bulk act, 1st Consolidated Statutes, sec. 1013, provides in general terms that "the sale in
bulk of a large part or the whole of a stock of merchandise otherwise·
than in the ordinary course of trade and in the regular and usual prosecution of the seller's business, shall be *prima facie* evidence of fraud,
and void as against the creditors of the seller, unless a specified notice
is given to creditors and inventory made within seven days before the
contemplated sale. The statute contains provision, also, that if the
vendor shall, before the sale, execute to a trustee a good bond available·
to creditors to an amount equal to the cash value of the goods in such
instances, the law shall not apply. In several cases where the question
was directly presented and considered, this has been approved as a valid
exercise of the police powers of government, and these and other authorities also hold that sales coming within the effect and operation of the
statute, and without compliance with the provisions as to the notice·
and inventory, are void as against creditors, and where these requirements have been met such a sale is to be regarded as *prima facie* fraudulent in the trial of an issue as to its validity. *Swift & Co. v. Tempelos,.*
178 N. C., 487; *Armfield Co. v. Saleeby,* 178 N. C., 298; *Whitmore v.
Hyatt,* 175 N. C., 117; *Gallup v. Rozier,* 172 N. C., 283; *Pennell v.
Robinson,* 164 N. C., 257.

And when avoided as to creditors of the vendor by reason of failure to·
comply with the statutory requirements the goods can be made available
by direct process of levy and sale in the hands of the original purchaser,
and being out of the usual course.of business, and so affecting him with
notice, such purchaser may be held liable for their value when they have·
been disposed of by him under the principles recognized and applied in
the well considered case of *Sprinkle v. Wellborn,* 140 N. C., 163, and
either remedy may be pursued by the creditors of the vendor as against
subsequent purchasers as long as the goods can be identified or until they·
pass into the hands of a *bona fide* purchaser for value and without
notice. *Mfg. Co., v. Summers,* 143 N. C., 102. In *Sprinkle v. Wellborn, supra,* the principle is stated as follows: "The remedy of the·
vendor is not defeated where a fraudulent vendee has sold the property
to an innocent purchaser, for in such case the proceeds of the sale are as·

available as the property itself. The fraudulent vendee becomes charge-able with the proceeds received from the innocent purchaser, but the property itself is not, and a personal judgment may be obtained."

And in *Summers' case, supra,* it was held, among other things, "That when property has been obtained by actionable fraud it can be followed as long as it can be identified and traced, and the right attaches not only to the wrongdoer himself, but to any one to whom it has been transferred otherwise than in good faith and for valuable consideration."

These being the recognized principles pertinent to the inquiry, it appears from the facts in evidence that the firm of Morris & Divers, dealers in automobile supplies, have sold their entire stock to the Mat-thews Company, and in our opinion such a sale comes directly within the provision of the statute; that the same is void as against plaintiff as creditor of the vendor, and the defendant purchasers are liable for the value of the goods included in the "stock of merchandise" of the vendors.

It is urged for defendant, the Matthews Company, that they are pro-prietors of a repair shop, and were not dealers in supplies generally, but only sold to customers whose machines were taken to them for repair, and that they could not properly come within the effect and operation of the statute, citing the recent case of *Swift & Co. v. Tempelos,* 178 N. C., 487, in support of their position. But apart from the testimony tending to show that these defendants sold tires and tubes and gas and oil, the question here is not what Matthews, the purchaser, has done and proposed to do with the goods, but what was the business of the vendors who sold to them, and there seems to be no dispute that this company, the original debtor, was a dealer in auto supplies. The char-acter of the bill bought of plaintiff would of itself well-nigh suffice to establish the nature of their business, and there seems to be no dispute about it in the record. The case cited for defendant, *Swift v. Tempelos, supra,* was the sale of supplies held for the purpose of a restaurant, which were not usually disposed of directly to customers, but only used for the purpose of making their food acceptable to their individual patrons in the ordinary run of their trade and occupation, and while a bulk sale of such an enterprise was excluded from the effect and opera-tion of the statute, it was treated as an exception coming very near to the border line, and in the well considered opinion of *Associate Justice Walker,* the inclusive character of the terms used in the statute, "a stock of merchandise," was fully recognized. In the original series of Words and Phrases, Vol. V, p. 4478, Webster's definition of "merchandise" is said to be "objects of commerce; whatever is usually bought and sold in trade or market or by merchants; wares, goods, commodities." And, citing several decided cases, the term is further there defined as includ-ing "all those things which merchants sell, either at wholesale or retail,

as dry goods, hardware, groceries, drugs," etc. And again the definition is given as "commodities or goods to trade with," saying that the word came into use as designating the goods and wares sold at fairs and markets. And in the decision referred to and much relied on by defendants, and also in *Gallup v. Rozier,* 172 N. C., 283, the supplies ordinarily sold in a garage are expressly recognized as coming within the statutory terms.

The question of the liability of J. P. Matthews as one of the purchasers, or a member of the firm, etc., must be determined under the principles ordinarily applicable to his case as presented in the pleadings and evidence, but on the record we are of opinion as stated that this transaction between the Morris-Divers Company and the Matthews Auto Electric Company comes within the provisions of the statute governing sales in bulk, that the purchaser must account for the value of the goods, etc., and for the error indicated plaintiff is entitled to a new trial of the cause, and it is so ordered.

New trial.