**FIRST NAT. BANK OF DURHAM v. RALEIGH SAV. BANK & TRUST CO.**

**In re AUSTIN–STEPHENSON CO., Inc.**

Circuit Court of Appeals, Fourth Circuit. January 14, 1930.

No. 2909.

J. Crawford Biggs, of Raleigh, N. C. (J. M. Broughton, of Raleigh, N. C., and R. Percy Reade, of Durham, N. C., on the brief), for appellant.

Josiah W. Bailey, of Raleigh, N. C. (Smith & Joyner, of Raleigh, N. C., on the brief), for appellee.

Before WADDILL and PARKER, Circuit Judges, and GLENN, District Judge.

PARKER, Circuit Judge. This is a controversy arising in the bankruptcy proceeding of the Austin-Stephenson Company between the trustee in bankruptcy and the First National Bank of Durham, N. C. The matter involved is the ownership of the stock of merchandise transferred by the Austin-Stephenson Company to a corporation which it had organized under the name of Austin's, Inc. The stock of merchandise has been sold by the trustee in bankruptcy and the proceeds are being held under an agreement to abide the result of this litigation. The claim of the bank is based upon the fact that it holds all of the capital stock of Austin's, Inc., under a pledge as security for notes owing by the Austin-Stephenson Company. The trustee claims that the transfer to Austin's, Inc., was void under the North Carolina Bulk Sales Law, and also because, independently of that statute, it constituted a fraud upon the creditors of the Austin-Stephenson Company. Both of these contentions were sustained by the referee and the District Judge, and the bank has appealed.

The facts in the case are practically undisputed. The Austin-Stephenson Company was a large mercantile concern, which for a number of years had been doing an extensive business at Smithfield, N. C., and which was adjudged bankrupt on February 15, 1927.

Less than nine months prior thereto, it organized Austin's, Inc., with a capital stock of $50,000, transferring to it the merchandise of the Austin-Stephenson Company on the first and second floors of the Austin-Stephenson Company building, consisting of dry goods, shoes, clothing, groceries, etc., and taking in exchange therefor the entire capital stock of Austin's, Inc., except four shares, which were issued to directors of the Austin-Stephenson Company to qualify them for serving as directors of Austin's, Inc. The Austin-Stephenson Company was insolvent at the time, being indebted in the sum of approximately $600,000. No notice was given to creditors of the transfer, nor was the Bulk Sales Law otherwise complied with.

It also appears that the transfer to Austin's, Inc., was a mere colorable transaction, evidenced by nothing more substantial than bookkeeping entries. There was no change in operation or personnel; and the name of the Austin-Stephenson Company was still displayed over the place of business. All purchases were made in the name of that company, the bank account was carried in its name, all checks were signed by it, and credit sales were charged to customers on its books. Austin's, Inc., kept no books and had no dealings with anyone except the Austin-Stephenson Company. The public generally, including wholesalers and dealers from whom purchases were made for it by the Austin-Stephenson Company, knew nothing of its existence. The officers of both corporations were practically the same, and both were under the absolute control of one man. The conclusion is irresistible that the business was still the business of the Austin-Stephenson Company, and that the incorporation of Austin's, Inc., was a mere device to enable the Austin-Stephenson Company to give what was in effect a mortgage upon a part of its stock of merchandise.

We agree with the learned judge and referee that the attempted transfer to Austin's, Inc., was void as against the creditors of the Austin-Stephenson Company and its trustee in bankruptcy, in the first place because of the failure to comply with the North Carolina Bulk Sales Law (Consolidated Statutes, § 1013), which provides:

"The sale in bulk of a large part or the whole of a stock of merchandise, otherwise than in the ordinary course of trade and in regular and usual prosecution of the seller's business, shall be prima facie evidence of fraud, and void as against the creditors of the seller, unless the seller, at least seven days

before the sale, make an inventory showing the quantity and, so far as possible, the cost price to the seller of such articles included in the sale, and shall within said time notify the creditors of the proposed sale, and the price, terms and conditions thereof. If the owner of said stock of goods shall at any time before the sale execute a good and sufficient bond, to a trustee therein named, in an amount equal to the actual cash value of the stock of goods, and conditioned that the seller will apply the proceeds of the sale, subject to the right of the owner or owners to retain therefrom the personal property exemption or exemptions as are allowed by law, so far as it will go in payment of debts actually owing by the owner or owners, then the provisions of this section shall not apply."

If it be assumed that there was an actual transfer of the title of the goods here involved from the Austin-Stephenson Company to Austin's, Inc., as contended by the bank, there can be no question that such transfer constituted a sale of a large part of a stock of merchandise within the meaning of this statute, and that, as there was no attempt to comply with the terms of the statute, such sale was absolutely void as against creditors. Pennell v. Robinson, 164 N. C. 257, 80 S. E. 417, Ann. Cas. 1915D, 77; Gallup v. Rozier, 172 N. C. 283, 90 S. E. 209; Raleigh Tire Co. v. Morris, 181 N. C. 184, 106 S. E. 562.

■ It is argued that, as there was no payment in money for the goods, but merely the issuance of stock, there was not a sale within the meaning of the statute and that consequently same has no application. But we do not think that the statute was meant to invalidate a transfer to one who has parted with his money on the strength thereof, and not a transfer to one who has parted with nothing, except capital stock, the sole value of which depends upon the transfer itself. Without going into the technical meaning of the word "sale," it signifies, in its popular sense, the transfer of property from one person to another for a consideration of value, without reference to the particular mode in which the consideration is paid. See Howard v. Harris, 8 Allen (Mass.) 297, 299, and State v. Colonial Club, 154 N. C. 177, 69 S. E. 771, 31 L. R. A. (N. S.) 387, Ann. Cas. 1912A, 1079. And it is in this sense that it is used in the statute here, which was intended, not to regulate sales, but to prevent a merchant or trader from disposing of his stock of merchandise, otherwise than in regular course of trade, and thus placing it beyond the reach of his creditors.

A transfer of merchandise in accord and satisfaction of a note has been held by the Supreme Judicial Court of Massachusetts to be a sale within the meaning of a similar statute. Gallus v. Elmer, 193 Mass. 106, 78 N. E. 772, 8 Ann. Cas. 1067. And the same holding has been made by the Supreme Courts of Michigan and Tennessee in Michigan Cent. R. Co. v. Morgan, 227 Mich. 491, 198 N. W. 967, and McCallum v. Jones, 150 Tenn. 492, 265 S. W. 984. In Hartwig v. Rushing, 93 Or. 6, 182 P. 177, 181, involving the transfer of merchandise in consideration of the satisfaction of certain notes and the conveyance of timber lands, the Supreme Court of Oregon said: "We have no hesitancy in declaring that the statute applies, not only to sales for money, but also to sales for property measured in money or, in the words of the books, for the equivalent of money or money's worth." Whether the transfer of an entire business to a corporation organized for the purpose of taking it over, as in Maskell v. Spokane, etc., Co., 100 Wash. 16, 170 P. 350, L. R. A. 1918C, 929, would come within the act, is a question which is not before us. In such cases, the corporation generally assumes the debts of the business and the merchandise remains liable therefor. Here there was a transfer of a large part of the stock of goods to a corporation which assumed none of the debts, but merely issued its capital stock in payment.

■■ But, quite apart from the bulk sales statute, we think that the transfer was void as being in fraud of the rights of creditors and of the statutes of North Carolina enacted for their protection. It is perfectly clear that there was no bona fide sale or transfer of the merchandise from the Austin-Stephenson Company to Austin's, Inc., at all. The alleged sale was nothing but a matter of book entries, and Austin's, Inc., was a mere paper corporation, which, with the stock of merchandise supposedly transferred to it, was at all times controlled by the Austin-Stephenson Company. What that company really did was that, under the guise of organizing a new corporation and pledging the stock thereof, it attempted to give to one of its creditors security on a shifting stock of merchandise without executing or registering a chattel mortgage for the information of other creditors, or otherwise observing the rules which the law prescribes.

In North Carolina any transfer of chattels as security for a debt is regarded as a chattel mortgage, Brown v. Dail, 117 N. C. 41, 23 S. E. 45; and to be good against creditors it must be recorded. C. S. § 3311. And,

304

if on a shifting stock of merchandise, it is presumptively fraudulent as to existing creditors even if recorded, unless it contains a provision for keeping an account of sales and applying the proceeds thereof to the mortgage debt. A. Blanton Grocery Co. v. Taylor, 162 N. C. 307, 78 S. E. 276. But, if what was attempted here can be upheld, the laws with respect to mortgages on stocks of merchandise and the registration thereof will go for naught; for all that will be necessary to evade them will be to organize a corporation, transfer to it the merchandise which it is desired to mortgage and pledge the stock of the corporation. It is needless to say that the law, which regards substance and not form, cannot be thus evaded. Furthermore, we know of no principle of law under which the assets of an insolvent corporation can be divorced from its liabilities.

It is said that the bank had no notice as to the circumstances attending the transfer or of any fraud on creditors, but was an innocent holder for value of the stock pledged to it. This is true; but the question is not what title the bank had to the corporate stock, but what title Austin's, Inc., had to the stock of merchandise. As we have seen, this title was not good against the creditors of the Austin-Stephenson Company or its trustee in bankruptcy; and of course the holder of stock in a corporation could have no better title to its property than the corporation itself.

There was no error, and the decree of the court below will be affirmed.

Affirmed.