KRAMER BROTHERS, INC.. v. O. R. McPHERSON, INDIVIDUALLY AND T/A SOUTHERN ELECTRONICS, AND RONNIE QUALLS, INDIVIDUALLY AND T/A RONNIE'S HOBBY & MODEL SHOP.

(Filed 11 January. 1957.)

**Sales § 23½ —Evidence held sufficient for jury on question of sale in bulk void under G.S. 39-23.**

Evidence, taken in the light most favorable to plaintiff, tending to show sale by a retailer of a sufficiently large part of his stock in trade, for which

he had not paid his wholesaler, to enable his transferee to start a like business of his own, without notice to the wholesaler or otherwise complying with the provisions of the statute, *held* sufficient to make out a case against the transferee to recover the value of the goods sold by the transferee in the ordinary course of his business or to recover the specific merchandise, when it can be identified in the transferee's hands, a sale within the definition of the statute being void. G.S. 39-23.

JOHNSON, J., not sitting.

APPEAL by plaintiff from *Hall, J.,* at 31 May, 1956 Term, of ALAMANCE.

Civil action to recover on contract for merchandise sold and delivered.

Plaintiff alleges in its complaint that defendant O. R. McPherson is indebted to it in the sum of $2,076.96 for certain goods, wares and merchandise sold and delivered by it to him, after maturity, and demand, and payment neglected, and that there are no offsets, credits, counterclaims or allowances to which McPherson is lawfully entitled.

And plaintiff also alleges in its complaint that subsequent to the sale of the merchandise by plaintiff to O. R. McPherson, "McPherson sold his entire business in bulk to defendant Ronnie Qualls; that said sale was and is void as against this plaintiff in that said sale was made in violation of, and not in compliance with the provisions of G.S. 39-23; that this plaintiff had no notice whatsoever of the sale and learned of it indirectly some time after it had been made."

It is also set forth in the complaint: "That this plaintiff is informed and believes, and thereupon alleges that the defendant, Ronnie Qualls, has commingled the merchandise acquired from O. R. McPherson in his business known as Ronnie's Hobby & Model Shop; that plaintiff has made demand upon the said defendant, Ronnie Qualls, for the payment of said indebtedness, but that payment has been refused."

Thereupon plaintiff prayed:

(a) That it recover of defendant, O. R. McPherson, the sum of $2,076.96 with certain interest thereon;

(b) That the bulk sale made by O. R. McPherson to Ronnie Qualls be declared null and void as against creditors of McPherson, and said sale set aside;

(c) That Ronnie Qualls be adjudged personally liable for any and all assets acquired from McPherson and sold or otherwise disposed of;

(d) For costs, and

(e) For such other and further relief as the court may deem just and proper.

The defendant, O. R. McPherson, failed to answer, and, as to him, judgment by default final, for the amount alleged in the complaint, was entered.

But defendant Ronnie Qualls, individually and t/a Ronnie's Hobby & Model Shop, answering, denied the material allegations of the complaint.

And the cause coming on for trial in Superior Court, plaintiff called and examined as its witnesses both O. R. McPherson and Ronnie Qualls.

O. R. McPherson testified in pertinent part: ". . . I have had occasion to be in hobby or electronic business. I was in such business about one year and a half ago. The trade name . . . was Southern Electronics. As to what I sold in that business, what the nature of the business was, it was mainly electronic shop, repairing televisions and radios and as a side line we put in some hobby goods, model airplanes and trains, etc. . . . In the course of my business I did have occasion to purchase some merchandise from Kramer Brothers, the plaintiff here . . . I have not paid them for all the merchandise. I owe them somewhere in the neighborhood of $2,000.00 . . . I received several statements . . . Looking at that paper there, I can refresh my memory or recollection as to how much I owe them, I think that is approximately it. It says $2,076.96. As to whether I still owe that now, I think so, yes. As to whether, after I had bought this merchandise from Kramer Brothers, and while I was still owing this money I say I owe, I ever had occasion to dispose of my business or my stock of merchandise in Southern Electronics . . . I did dispose of most of the equipment. Yes, I sold most of my stock of goods too . . . I sold over half of it. Mr. Qualls purchased some of it . . . the material was inventoried by Mr. Qualls and we saw what the value came up and I offered him the material he had inventoried if he desired to purchase for a specific price . . . I sold it to him for somewhere between $845.00 and $865.00, as well as my memory serves me . . . there was money value put on it. As to whether Mr. Qualls put any value on it . . . my best recollection, it was $1,700.00 gross. I don't know that Mr. Qualls was in any kind of business when he purchased this merchandise. Yes, he was in business since then. The name of his business he was in since then is Ronnie's Model Shop . . . I sold the merchandise to him in June of last year . . . 1955. Yes, I believe the merchandise I sold to him included some of the material I purchased from Kramer Bros. I know it contained some of the materials . . . After I sold the merchandise to Mr. Qualls I sold some to somebody else. I sold to different individuals, I don't know how much . . . I don't know how much I got for it . . . No, at the time I sold this merchandise to Mr. Qualls, I did not notify Kramer Brothers before that that I was selling it. I didn't prepare any papers appointing a trustee or putting any money in the hands of a trustee . . . I did not give any bond . . . I have not seen any given by anybody else."

Then Ronnie Qualls testified: ". . . I am a defendant in this action . . . I operate Ronnie's Hobby & Model Shop. I started operating this shop in July 1955 . . . I purchased some merchandise from Mr. McPherson about that time . . . It was some of the merchandise he had in the store—just the hobby merchandise . . . I used that merchandise in the store I opened up; that helped to start my stock . . . It started the stock in my store . . . I have been selling the stock I bought from him. . . . I took an inventory of what he had in stock and what I wanted. I have that inventory here . . . You may see it . . . I have not checked this inventory against my present stock to see if any material I bought from Mr. McPherson is still there. When the stock was brought up to my store we added it in with all the rest of it . . . I bought this stuff from Mr. McPherson and started off my store and made an inventory . . . I sold from that to my customers . . . I made inventory of the stuff I brought into my store . . . This is the inventory I took shortly after I put it in the store . . . When I put it in the store, that is what I had right there . . . I haven't checked to see everything I had bought from him. A lot of stuff is still up there. I couldn't tell exactly what is and what isn't. I can go by that book and see and pick it out if I have to because lots of things we replenished the stock as I take it out I put it right back in . . . I have been buying the same things . . . about the same basis . . . hobby merchandise . . . I trade with Kramer Brothers—with them and other companies. I bought my first stock from Kramer Brothers to start with. As to whether I really know what I got from Mr. McPherson and what I bought from Kramer Brothers to replace items, the only way I could tell is put it back on the book. I could tell the old boxes from the new boxes."

Plaintiff introduced in evidence the summons as appears in the record proper showing that the action was instituted on 15 September, 1955, and that summons was served on 16 September, 1955.

Thereupon plaintiff rested its case.

Motion of defendant Ronnie Qualls for judgment as of nonsuit was allowed. The court entered judgment in accordance therewith as to him.

Plaintiff excepted thereto, and appeals therefrom to Supreme Court and assigns error.

*W. D. Madry and W. R. Dalton, Jr., for Plaintiff Appellant.*
*John D. Xanthos for Defendant Qualls Appellee.*

WINBORNE, C. J. Does the evidence offered by plaintiff in the trial below, as set forth in the case on appeal, taken in the light most favorable to plaintiff, make a case for the jury for violation of the sale in

bulk statute, G.S. 39-23? In view of the language of the statute, and decided cases in this State, this Court is of opinion that the evidence does make out such a case, and so holds.

The statute, G.S. 39-23, declares that the "sale in bulk of a large part or the whole of a stock of merchandise, otherwise than in the ordinary course of trade and in regular and usual prosecution of the seller's business, shall be void as against the creditors of the seller," unless the seller makes an inventory as specified and gives timely notice to the creditors of the proposed sale, or executes bond, all as is therein specified.

"Merchandise," within the intent and meaning of this sale in bulk statute, is declared by this Court in *Swift & Co. v. Tempelos,* 178 N.C. 487, 101 S.E. 8, to be "limited to things which are ordinarily bought and sold, in the way of merchants, and as the subjects of commerce and traffic." Full discussion of the term is there set forth in opinion by *Walker, J.,* writing for the Court.

Tested by the terms of the sale in bulk statute, the evidence in the instant case tends to show, or is reasonably susceptible of the inference that defendant McPherson, as a side line to his electronic shop, repairing televisions and radios, "put in hobby goods model airplanes and trains, etc."; that in the course of his business he purchased more than $2,000.00 worth of merchandise from Kramer Brothers, the plaintiff, for which he has not paid; that in the language of McPherson, "I sold most of my stock of goods . . . over half of it—Mr. Qualls purchased some of it . . . I sold it to him for somewhere between $845.00 and $865.00 . . ."; that Qualls prepared an inventory—$1,700.00 gross; and that McPherson did not notify Kramer Brothers, his creditor, or otherwise comply with provisions of the sale in bulk statute.

And the evidence further tends to show that the stock of goods purchased by Qualls was sufficiently large to enable him to start a business of his own; and that, quoting Qualls, "When the stock was brought up to my store we added it in with all the rest of it . . ." Qualls says he made an "inventory of the stuff I brought into my store . . . A lot of the stuff is still up there. I couldn't tell exactly what is and what isn't. I can go by that book and see and pick it out if I have to . . ."

Indeed headnote #2 in *Rubber Co. v. Morris,* 181 N.C. 184, 106 S.E. 562, epitomizes the decision there in this manner: "When a sale of merchandise in bulk is avoided for non-compliance with the statute, C.S. 1013 (now G.S. 39-23), the goods can be made available by direct process or levy and sale in the hands of the original purchaser, or such purchaser may be held liable for their value when they are disposed of by him, and either remedy is available to the creditors of the vendor against subsequent purchasers as long as the goods can be identified,

or until they have passed into the hands of a *bona fide* purchaser for value without notice."

The sale in bulk statute has been the subject for consideration by this Court in several cases. See *Pennell v. Robinson*, 164 N.C. 257, 80 S.E. 417; *Gallup v. Rozier*, 172 N.C. 283, 90 S.E. 209; *Whitmore v. Hyatt*, 175 N.C. 117, 95 S.E. 38; *Armfield Co. v. Saleeby*, 178 N.C. 298, 100 S.E. 611; *Swift & Co. v. Tempelos, supra; Rubber Co. v. Morris, supra,* and possibly others. And it may be noted that these decisions were written in the light of the wording of the statute at the time. Hence it is appropriate to bear in mind these matters in connection therewith.

The sale in bulk statute was enacted by the 1907 session of the General Assembly as Chapter 623 P.L. 1907, and has since been amended, and codified, (1) as C.S. 1013, and (2) now G.S. 39-23. As originally written the first line of Section 1 read "that the sale in bulk of a large part of the whole of a stock of merchandise . . ." But in an act P.L. 1913 Chapter 30, the preposition "of" appearing between the word "part" and the word "the" in the phrase just quoted was stricken out and the conjunctive word "or" inserted in lieu thereof,—so that the phrase was made to read "that the sale in bulk of a large part or the whole . . ."

Lastly, the General Assembly, 1945 Session Laws of North Carolina, Chapter 635, Section 1, sub-section (26) amended G.S. 39-23 by striking out the words *"prima facie* evidence of fraud, and" appearing in lines five and six, so that the sale in bulk as set forth in Section 1 instead of reading *prima facie* evidence of fraud is made to read "shall be void as against creditors of the seller." So it is now.

In the meantime other amendments were enacted by General Assembly, P.L. 1913, Extra Session, Chapter 66, and P.L. 1933, Chapter 190, all of which are embodied in G.S. 39-23 as it now appears.

The judgment from which appeal is taken will be set aside, and the cause submitted to a jury upon issues arising on the pleadings, and under proper charge by the court

Reversed.

JOHNSON, J., not sitting