OSCAR DANIELS CO. *v.* CITY OF SAULT STE. MARIE.

1. APPEAL AND ERROR—EXCEPTIONS—NECESSITY—REVIEW.
   Where, in a case tried before the court without a jury, there was no request for special findings, no findings made, and no exceptions taken, under Circuit Court Rule No. 45 there is nothing for the Supreme Court to review.

2. SAME—EVIDENCE—SUFFICIENCY—EXCEPTIONS—REVIEW.
   Where no exceptions are taken to any of the findings, and it is not assigned as error, or contended, that the facts found do not support the conclusions of law, assignments of error in the admission and rejection of testimony and the sufficiency of the evidence to support particular findings cannot be reviewed.

3. SAME—STIPULATED FACTS PRESENTING QUESTION OF LAW—REVIEW.
   Although the practice in conformity with Circuit Court Rule No. 45 was not followed, where the stipulated facts present a single principal question of law, the Supreme Court may consider the contention made in substance and effect in the assignments of error and argued in the briefs, whether they support the conclusion of law—the judgment.

4. STATES—JURISDICTION OF STATE OVER CEDED TERRITORY—STATUTES.
   The jurisdiction over the St. Mary's Falls ship canal ceded to the United States by the State of Michigan in Act No. 17, Pub. Acts 1881, construed, and *held*, to be less than exclusive; the purpose being to confer upon the United States exclusive power to control the canal, and any buildings and works connected therewith for the purposes of operation.

5. SAME—TAXATION OF PRIVATE PERSONALTY ON CEDED TERRITORY—VALIDITY.
   The jurisdiction ceded by said act being less than exclusive, and the ceded territory not being out of the State so far as the operation of its tax laws are concerned, a tax levied upon private personal property thereon within the limits of the city of Sault Ste. Marie, by said city, although employed in contract construction work for the United States government, *held*, valid.

Error to Chippewa; Fead (Louis H.), J. Submitted April 24, 1919. (Docket No. 107.) Decided December 23, 1919.

Assumpsit by the Oscar Daniels Company against the city of Sault Ste. Marie for taxes paid under protest. Judgment for plaintiff. Defendant brings error. Reversed.

*H. W. Runnels* and *F. T. McDonald,* for appellant.
*Davidson & Hudson,* for appellee.

This cause was tried by the court without a jury and resulted in a judgment for the plaintiff. No findings were requested or were made. No exceptions were taken to the conclusions arrived at by the court. No points of law were presented by either party as upon requests to charge in jury trials. Circuit Court Rule No. 45. There was a stipulation of facts, upon the offer of which plaintiff rested. Defendant proceeded then to introduce certain testimony not contradicting the facts embraced in the stipulation and not apparently used by the court in reaching a conclusion. Defendant raises the questions argued by assignments of error which, in substance and effect, say that the facts do not support the judgment. The stipulation of facts is:

"The facts in the above entitled cause being largely matters of record in the office of the United States engineer at Sault Ste. Marie and the office of the city treasurer at Sault Ste. Marie, Michigan, all being readily susceptible of proof and there being no material dispute between the respective parties hereto as to those facts, the same are stipulated and agreed between the respective parties hereto, as follows, to wit:

"1. That the plaintiff is an Illinois corporation, having its office and principal place of business in the city of Chicago, county of Cook, Illinois.

"2. That the plaintiff is engaged in the contracting business for profit and gain and during the years 1916

and 1917 was engaged in the excavation for and construction of a lock to be known as the Fourth Lock at the Falls of St. Mary's river under and by virtue of a contract entered into by said plaintiff with the United States government for profit and gain.

"3. That for the purpose of the said excavating and construction work the plaintiff brought to the place of operation certain steam shovels, locomotives, cars and other equipment, lumber, cement, trap rock, and other material, and erected certain warehouses, tracks and temporary buildings, all of which have been used solely in connection with the erection of the Fourth Lock at Sault Ste. Marie, Michigan.

"4. That the said personal property was of the value of $35,000.00 or thereabouts and it has been used and kept only upon land ceded by the State of Michigan to the United States government by Act No. 17 of Public Acts of Michigan, session of 1881.

"5. That the city of Sault Ste. Marie has assessed, levied and attempted to collect State, county and municipal taxes upon the within named personal property of the Oscar Daniels Company property for the years 1916 and 1917, which the plaintiff has refused to pay until compelled to do so.

"6. That on December 1, 1916, the treasurer of the defendant, the city of Sault Ste. Marie, made its usual demand for payment of personal taxes for the year 1916, informing the plaintiff as follows:

" 'The above tax is now due and payable on or before January 9th, 1917.'

"And thereafter on May 11th, 1917, made another similar demand upon the plaintiff for the personal taxes for 1916 with the accrued interest added thereto.

"7. That in December, 1917, the treasurer of the defendant, the city of Sault Ste. Marie, made a similar demand upon the plaintiff for the taxes of 1917; both these demands were ignored by the plaintiff who neglected to pay its taxes for the respective years of 1916 and 1917, and said plaintiff did not pay its taxes until April 30th, 1918.

"8. On February 15th, the defendant, by Herbert W. Runnels, Esq., its city attorney, made a demand upon the plaintiff for the taxes of 1916 and 1917 and

threatened seizure unless the taxes were paid within ten days following the letter, a copy of which being hereto attached and marked Exhibit 'A,' and at about that time the city attorney conferred with the attorneys for the plaintiff, advising them that unless the taxes were paid he was directed by the city commission to enforce the collection by seizure of the personal property and he was informed by the plaintiff, through its attorneys, that the company would only pay upon compulsion.

"9. On March 26th, the plaintiff was formally notified by the defendant, through its city attorney, that a levy and seizure of the personal property of the plaintiff would be made on the 30th of March, A. D. 1918, a copy of which letter being hereto attached and marked Exhibit 'B.'

"10. That on April 20th, 1918, the defendant, by George S. Wescott, its treasurer, made a formal demand for payment of taxes as follows:

    For 1916 ......................................$947.37
    For 1917 ...................................... 874.81

"And upon said demand the plaintiff still refused to pay the taxes.

"11. That after demand and refusal on, to wit, the 22d day of April, the city treasurer levied upon the personal property of plaintiff for the purpose of sale of same, duly posted proper notice that the same would be sold on public sale at the time and place specified in said notice.

"12. That on April 30th, 1918, the plaintiff paid to the defendant at the office of its city treasurer the sum of $947.37 for the taxes for the year 1916, and

"The sum of $874.81 for the taxes for the year 1917, receiving a receipt therefor, a copy of which is hereto attached and marked Exhibit 'C,' this payment being made under protest in writing, said protest specifying the reasons for the several refusals on the part of the plaintiff to pay said taxes, copy of which protest is hereto attached and marked Exhibit 'D.'

"13. That all the facts applying to either of the years for which taxes were assessed as set forth in this stipulation apply to the other year and the action for the recovery of each of the several years is con-

solidated into one action by previous agreement between counsel, for the purpose of avoiding multiplicity of litigation.

"14. That the city of Sault Ste. Marie is a regularly organized municipal corporation being organized under and by virtue of the laws of the State of Michigan, and that the officers assessing the taxes for the respective years, 1916 and 1917, were regularly and duly elected officers of the city of Sault Ste. Marie, and were properly engaged in the duties of their respective offices.

"15. That the geographical limits of the State of Michigan, as set forth in the Constitution, extend north and west in St. Mary's river along the boundary line between the United States and Canada to a point where said boundary line last touches Lake Superior and includes within its limits the land upon which the plaintiff's personal property was situated at the time of the seizure.

"16. That the geographical limits of the village of Sault Ste. Marie as set forth in the charter of the village of Sault Ste. Marie as incorporated in 1879 and of the city of Sault Ste. Marie as incorporated in 1887, and in chapter 1, section 1 of the city charter, as adopted June 26th, 1917, extend north and west along the international boundary line between the United States and Canada and includes within its limits the land upon which the plaintiff's personal property was situated at the time of its assessment and also at the time of its seizure.

"17. That at the time of the assessment of the taxes for the years 1916 and 1917, in this stipulation set forth, there was property of the plaintiff engaged in the excavating for and construction of the Fourth Lock, and not otherwise, and upon the land ceded as set forth in paragraph 4 herein, sufficient to justify the levy of said taxes at the time of the assessment, to wit, the second Monday in April of each of the years 1916 and 1917.

"18. That the assessment, review, apportionment and all the various steps taken in levying taxes within the city of Sault Ste. Marie for the years 1916 and 1917 were regular and in conformity with the statutes of the State of Michigan and the charter of the city of

Sault Ste. Marie; that the only question in dispute relative to the proceedings in the tax against the plaintiff for the years 1916 and 1917 in the above entitled cause is the right or jurisdiction of the city of Sault Ste. Marie to assess for taxation personal property of the said Oscar Daniels Company, located within the limits of the territory ceded by the State of Michigan to the United States by Act No. 17 of the Public Acts of 1881.

"19. That the said tax was assessed for and apportioned to the several State, county, and municipal funds, as follows: 1917—State tax, $66.77; county tax, $174.58; city tax, $245.00; school tax, $231.00; one mill school tax, $35.00; county road tax, $72.94.

"1916—State tax, $55.75; county tax, $142.00; city tax, $310.00; school tax, $272.95; one mill tax, $25.00; county road tax, $40.50; that to the above taxes was added as provided for in the statutes of the State of Michigan and the charter of the city of Sault Ste. Marie, a collection fee of 4 per cent. and interest at the rate of 1 per cent per month from March 1st, 1917, in case of the 1916 tax, and from March 1st, 1918, in the matter of the 1917 tax."

The protest accompanying the payment of the said taxes reads as follows:

"To the Mayor and Commissioners of
  Sault Ste. Marie, Michigan.
"To George S. Wescott, Treasurer of
  Sault Ste. Marie, Michigan.
"The certain personal property of the Oscar Daniels Company has been seized for the taxes of 1916 and 1917 in the following amounts:
      1916........$947.73    1917........$874.81
"Having made a seizure, which he claims is under and by virtue of section 1815 of chapter 28 of Howell's Annotated Statutes, second edition [1 Comp. Laws 1915, § 4043], and having posted certain notices of sale of said personal property preparatory to making sale thereof under the statute.

"The city treasurer threatens to sell said personal property in an amount sufficient to satisfy the said taxes for 1916 and 1917, to wit: the sum of $1,822.54 together with necessary expense and legal charges therefor.

"In order to avoid the sale of said property of the Oscar Daniels Company and in order to protect said property from seizure and sale by the city treasurer, the said Oscar Daniels Company hereby presents the sum of $947.74 in payment of the taxes of 1916 and the sum of $874.81 in payment of the taxes for 1917, it being understood, however, that such tender and payment is made under protest and the Oscar Daniels Company hereby protests against the assessment, levy, seizure and threatened sale of said personal property for the following reasons, to wit:

"1. That the said Oscar Daniels Company is not a citizen or resident of Sault Ste. Marie, Chippewa county, Michigan.

"2. That the property upon which said assessment was levied was not at the time of the respective assessments of 1916 and 1917 within the city of Sault Ste. Marie, Michigan, nor within the jurisdiction of the city of Sault Ste. Marie, Michigan, nor within the jurisdiction of the State of Michigan for the purpose of the assessment of said taxes.

"3. For the further reason that the Oscar Daniels Company is and was at the time of the assessment of said taxes against its personal property a contractor engaged in the construction of the Fourth Lock for the United States government and said personal property of the Oscar Daniels Company was in use in the construction and erection of the said Fourth Lock being erected by the Oscar Daniels Company as contractor for the United States Government, and said personal property was situated on lands and territory ceded to the United States by the State of Michigan under and by virtue of Act No. 17 of Public Acts of 1881, and that while said property was within what is loosely termed as the geographical limits of the State of Michigan, it was nevertheless upon the property ceded by the State to the Federal government for the erection of the locks and other Federal eventualities.

"4. For the further reason that neither the city of Sault Ste. Marie nor the county of Chippewa, nor the State of Michigan, have any right to assess taxes upon the property of a contractor so engaged in the erection of locks or other government instrumentalities

upon the territory ceded by the State of Michigan to the United States government under and by virtue of Act No. 17 of Public Acts of 1881. For that reason the assessment of said taxes by the city assessor and by the city of Sault Ste. Marie, the levy and collection is illegal, said personal property being beyond the jurisdiction of the assessing officers of the city of Sault Ste. Marie for any purposes whatever.

"5. For the further reason that the said property is not and never has been within the jurisdiction of the city of Sault Ste. Marie, the county of Chippewa, or State of Michigan."

It was also admitted that the plaintiff had not been admitted to do business in Michigan.

Upon the principal point in dispute, the court in the opinion said:

"This is a suit brought by plaintiff to recover taxes paid by it to defendant under protest. The facts are practically all stipulated. The principal question is whether the property of the plaintiff was subject to taxation in the city of Sault Ste. Marie, it being located upon and used in the construction of the Fourth Lock of the government canal, jurisdiction over which was ceded by the State to the Federal government by Act No. 17, Public Acts of 1881.

"The taxing power of the State is limited to persons and property within and subject to its jurisdiction. The State cannot tax tangible personal property unless (1) the party taxed is a resident of the State or (2) the property taxed has an actual *situs* within the State. 37 Cyc. p. 718.

"The plaintiff is a foreign corporation and a nonresident of the State, except so far as its location in constructing such lock may change the situation. The proposition of whether the property taxed has a *situs* within the State depends upon the effect of Act No. 17, Public Acts 1881.

"Jurisdiction over property within a State may be acquired by the Federal government in two ways: *First*, by the purchase of property, with the consent of the legislature of the State, for certain specified purposes, as provided by article I, section 8, of the Constitution of the United States, and *second*, by ces-

sion of the jurisdiction by the State. When the constitutional provision is invoked and the proper conditions are fulfilled, the Federal government has exclusive sovereignty over the territory by virtue of such provision. It has no application to this case. The State, however, may cede jurisdiction to the United States over property, otherwise acquired than under the constitutional provision, and may grant it full political and legislative sovereignty, or make such reservations, as it pleases, not inconsistent with the free and effective use of the land for governmental purposes. How broad the cession may be is for the State to determine and the Federal government acquires jurisdiction solely from the cession, not at all from the Constitution, in such cases. *Fort Leavenworth R. Co.* v. *Lowe*, 114 U. S. 525 (5 Sup. Ct. Rep. 995); *Chicago, etc., R. Co.* v. *McGlinn*, 114 U. S. 542 (5 Sup. Ct. Rep. 1005).

"The cession in question has been before this court and before the Supreme Court of this State in *Willis* v. *Oscar Daniels Co.*, 200 Mich. 19. The various propositions presented by defendant herein to limit the effect of the cession were presented in that case. It is there held that Act No. 17, Public Acts 1881, operated to cede to the United States exclusive jurisdiction over the land upon which the plaintiff's property was situated, except for the purpose of serving process. The cession is complete except as to the express reservation. Practically speaking, the property is not a part of the State of Michigan or the city of Sault Ste. Marie.

"Consequently the city has no legal right to assess taxes against the property of the plaintiff so situated.

"Defendant contends, however, that the cession does not invalidate the taxes because there was a tax law in operation over the property upon which plaintiff's goods were situated, in and prior to 1881, and such law continues to operate until congress acts. This position is untenable.

"1. Because the taxes in question were not levied under the law of 1881, or prior thereto, but were levied under the law of 1891 and amendments.

"2. Because a tax law is not a municipal law 'intended for the protection of private rights,' which

continues in force until abrogated or changed by the new sovereign or government, as stated in *Chicago, etc., R. Co.* v. *McGlinn, supra.* It is there said that the principle which controls as to laws in existence at the time of the cession is the same in cases of cession from the State to the Federal government as from one nation to another. Taxation is an essential and inherent attribute of sovereignty and an act thereof. 37 Cyc. p. 715. It is evident that the reservation of the right to continue to levy taxes upon property ceded by one sovereignty to another would need to be express in order to obtain.

"It is true that the property of Federal agencies may be taxed by the States. The property of the plaintiff would not be exempt merely because of its contract with the United States. It is the fact that it is not working and holding property within the jurisdiction of the State which relieves it from taxation in this instance." * * *

The act referred to in the stipulation and the opinion reads:

"An act to authorize the board of control to transfer the Saint Mary's Falls ship canal, with the property belonging to the same, to the United States.

"Whereas, congress at its last session included in the river and harbor bill the following:

"For improving and operating Saint Mary's river and Saint Mary's Falls canal, two hundred and fifty thousand dollars. 'And the secretary of war is hereby authorized to accept on behalf of the United States from the State of Michigan the Saint Mary's canal and the public works thereon: *Provided,* Such transfer shall be so made as to leave the United States free from any and all debts, claims or liability of any character whatsoever, and said canal after such transfer shall be free for public use: *And provided further,* That after such transfer the secretary of war be and hereby is authorized to draw from time to time his warrant on the secretary of the treasury to pay the actual expenses of operating and keeping said canal in repair'; therefore,

"SECTION 1. *The People of the State of Michigan enact,* That the board of control of the Saint Mary's Falls

ship canal be and hereby is authorized and directed to transfer the said canal and the public works thereon, with all its appurtenances and all the right and title of the State of Michigan in and to the same, to the United States, in accordance with [the] provisions of the above .mentioned clause: *Provided,* That this cession is upon the express condition that the State of Michigan shall so far retain concurrent jurisdiction with the United States over the Saint Mary's Falls ship canal, and in and over all lands acquired or hereafter acquired for its use; that any civil or criminal process issued by any court of competent jurisdiction, or officers having authority of law to issue such process, and all orders made by such court, or any judicial officer duly empowered to make such orders, and necessary ,to be served upon any such person, may be executed upon said Saint Mary's Falls ship canal, its lands, and in the buildings that may be erected thereon, in the same way and manner as if jurisdiction had not been ceded as aforesaid.

"SEC. 2. The board of control of the Saint Mary's Falls ship canal are hereby authorized and empowered, at any time when they may deem it proper, to transfer all material belonging to said canal, and to pay over to the United States all moneys remaining in the canal fund, excepting so much as may be necessary to put the said canal in repair for its acceptance in accordance with the act above recited: *Provided,* Such transfer of material and payment of moneys shall be in consideration of the construction, by the United States, of a suitable dry dock, to be operated in connection with the Saint Mary's Falls ship canal for the use of disabled vessels.

"This act is ordered to take immediate effect.

"Approved March 3, 1881."

Appellant contends that the tax was rightfully laid, and, if not, that plaintiff, not having been admitted to do business in the State, is not in position to sue for recovery of the tax, and, finally, that in no event can there be recovered a greater amount than the city tax.

FELLOWS, J. (*after stating the facts*). Although not raised by counsel for appellee, the first question

presented by the record is whether there is anything before the court for its determination. It has been held that where no request for special findings is made and no findings in fact made and no exception taken, there is nothing to review. *Nichol* v. *Ward*, 156 Mich. 136; *Wilson* v. *Hugus*, 163 Mich. 577.

And it has been repeatedly held that where no exceptions are taken to any of the findings and it is not assigned as error, or contended, that the facts found do not support the conclusions of law, assignments of error in the admission and rejection of testimony and the sufficiency of the evidence to support particular findings cannot be reviewed. See cases cited in note to section 4, Rule No. 45, in Searl's Michigan Court Rules. We have concluded that as the facts have been stipulated and, as stipulated, they present a single principal question of law, we may consider the contention made in substance and effect in the assignments of error and argued in the briefs, whether they support the conclusion of law—the judgment.

Upon the main proposition as to whether the tax was rightfully laid, we are to consider whether the jurisdiction of the State extended for that purpose to any personal property situated and used on the ceded lands. If the territory is beyond the jurisdiction of the State and within the exclusive jurisdiction of Congress, as the trial court held, then the judgment is right. The point, it is said by appellee, is directly ruled by *Willis* v. *Oscar Daniels Co.*, 200 Mich. 19, where a construction was placed upon the proviso to the act of 1881 to the effect that—

"The jurisdiction reserved was for the purpose of providing there should be no neutral territory where civil and criminal process might not be served."

And it must be admitted that the opinion of the circuit court in that case, quoted from at length in the opinion of this court, denies jurisdiction of the

State over the ceded territory. But this court did not adopt the opinion of the trial judge in that case; and, as will be pointed out, the opinion of this court does not, of necessity, deny all jurisdiction of the State in ceded territory. The question there before the court was the right of the State to regulate the relations, rights and liabilities of -employees and employers engaged in the construction of governmental works—in their performance of the functions of the Federal government. The language there used must be limited, in its application, to the case then before the court. Here the question involved is whether the State surrendered its sovereign power of taxation. The case must turn upon the construction of the grant made by the State to the United States.

In *Fort Leavenworth R. Co.* v. *Lowe*, 114 U. S. 525 (5 Sup. Ct. Rep. 995), and in *Chicago, etc., R. Co.* v. *McGlinn*, 114 U. S. 542 (5 Sup. Ct. Rep. 1005), the principles affecting a construction of the grant were exhaustively considered by the Supreme Court of the United States, with conclusions which, applied here, require, we think, a reversal of the judgment. As a fact in both cases, it appeared that the State of Kansas ceded to the United States exclusive jurisdiction over and within the territory known as the Fort Leavenworth reservation in that State, the title to which was in the United States, saving the right of the State to serve civil and criminal process within said reservation and saving further to said State the right to tax railroad, bridge and other corporations, their franchise and property, on said reservation. The State levied a tax on the track, right of way, franchises, road bed, telegraph line and instruments connected therewith on the reservation, the tax was paid under protest, and the suit was brought to recover the money so paid. It was the contention of the railroad company that the act of cession operated under the Con-

stitution of the United States to vest in the United States exclusive jurisdiction over the reservation and that the last saving clause, being inconsistent with that result, should be rejected. This contention the court rejected, holding—

"that a building on a tract of land owned by the United States used as a fort, or for other public purposes of the Federal government, is exempted, as an instrumentality of the government, from any such control or interference by the State as will defeat or embarrass its effective use for those purposes. But, in order that the United States may possess exclusive legislative power over the tract, except as may be necessary to the use of the building thereon as such instrumentality, they must have acquired the tract by purchase, with the consent of the State. (Art. I, § 8, subd. 17.) This is the only mode prescribed by the Federal Constitution for their acquisition of exclusive legislative power over it. When such legislative power is acquired in any other way, as by an express act ceding it, its cession may be accompanied with any conditions not inconsistent with the effective use of the property for the public purposes intended."

*Vide* opinion in *Chicago, etc., R. Co.* v. *McGlinn, supra.* And in the second case it was held that a law of Kansas, passed before the cession of the reservation, making a railroad company whose right of way was unfenced liable for the value of stock killed by its trains upon such right of way, remained in force after the cession of the reservation, it having been contended, to defeat a judgment of the State court given for the value of cattle killed, that the act became inoperative within the limits of the reservation after the act of cession to the United States of exclusive jurisdiction over it.

In the case at bar there is not, in terms, as there was in the case of the Fort Leavenworth reservation, a cession to the United States of exclusive jurisdiction and, as the cession was not made upon purchase

by the United States and consent of the State thereto, there is no implication of a cession of exclusive jurisdiction except as the implication may be raised upon the proviso, which, however, reserves no legislative jurisdiction. And the jurisdiction expressly reserved may be accounted for upon the theory that for whatever reason the cession was made it was sufficient to confer exclusive jurisdiction in the United States to control the canal, any buildings and works connected with it, and with its operation for the purposes of its operation. There was no occasion for the State to cede exclusive jurisdiction to the United States, no apparent reason for denying to the State such jurisdiction, legislative and other, as did not interfere with the control by the United States of the property transferred for the purposes of the transfer.

We construe the grant itself as a cession of less than exclusive jurisdiction, and the proviso as it was construed in *Willis* v. *Oscar Daniels Co., supra.* In this view, the ceded territory is not out of the State of Michigan so far as the operation of its tax laws is concerned, but is within the State. The tax levy in question was properly made, and the tax was a lawful one.

*Willis* v. *Oscar Daniels Co., supra,* may, and should, rest upon the ground that the State legislation sought there to be enforced affected the United States in a matter over which it had exclusive jurisdiction, namely, the building of a lock in the ceded territory.

The matter and language of this opinion are largely those of the late Justice OSTRANDER which are now formulated into this opinion of the court.

The judgment is reversed and a new trial granted, with costs to appellant.

BIRD, C. J., and MOORE, STEERE, BROOKE, STONE, and KUHN, JJ., concurred.