JACKSON *v.* CONTINENTAL INSURANCE CO.

1. Appeal and Error—Trial by Court Without a Jury—Exceptions to Findings—Amendments—Review.

Where the case was tried in the court below without a jury, and the only findings of fact and law were in a written opinion in which judgment was rendered for defendant, and no attempt was made by plaintiff to follow the provisions of Circuit Court Rule No. 45 or 3 Comp. Laws 1915, §§ 12586, 12587, and the only exception filed was that the evidence did not support the findings of fact or the judgment, the Supreme Court, in reviewing same, will give the record the most liberal construction possible and treat the opinion as a finding of fact and law duly excepted to, and consider whether the evidence supports the judgment.

2. Same—Finding Supported by Evidence — Insurance — Insurable Interest.

In an action on an insurance policy for the value of hay destroyed by fire, the finding of the court below that title to the hay by sale had passed from plaintiff to third parties, before the fire, and therefore plaintiff could not recover, *held*, supported by the evidence.

Error to Clare; Hart (Ray), J. Submitted June 10, 1920. (Docket No. 48.) Decided July 20, 1920.

Assumpsit by John Jackson, Jr., against the Continental Insurance Company on a policy of insurance. Judgment for defendant. Plaintiff brings error. Affirmed.

*Joseph F. Bowler* and *C. W. Perry,* for appellant.

*Walters & Hicks,* for appellee.

FELLOWS, J. In 1916 plaintiff and one Jay Wyman entered into an arrangement whereby plaintiff was to furnish the money and Wyman was to buy hay at

Clare, the profits to be divided. Under this arrangement plaintiff furnished some $3,500 which Wyman used in buying hay. The hay was stored in three buildings, one being in Clare and the other two in the country. On December 22d defendant issued to plaintiff its policy of insurance for $1,000 on the hay in the Clare warehouse for a period of one year. In the summer of 1917 plaintiff became insistent that the hay should be sold; he had been offered at one time $15 per ton which had not been accepted. Mr. Wyman was the agent of Chatterton & Son of Mt. Pleasant and was also buying hay for them. He was then using the Clare warehouse to store hay purchased for that company. Some time prior to August 22d plaintiff came to an agreement with Wyman whereby he was to have $12.50 per ton net to him for the hay, Chatterton & Son to take the hay and Wyman to secure his compensation and profits from that company. A considerable portion of the hay was shipped and paid for by Chatterton & Son. On August 22d the warehouse and hay were destroyed by fire and this action is brought on the policy of insurance. The case was tried by the court without a jury. After considering the matter for some time he filed a written opinion in which he reviewed the testimony at some length and under the statement "conclusions of law," held that the title to the hay passed to Chatterton & Son and rendered a judgment for the defendant.

While it is quite possible that we would agree with all that was said by the trial judge in his opinion if we measured and weighed the evidence and considered the law applicable thereto, we cannot upon the state of this record pursue our inquiry to the extent we are here asked. There has been no attempt made to follow the provisions of Circuit Court Rule No. 45 or section 12586, 3 Comp. Laws 1915. No points of law were presented to the trial judge; there was no

request before judgment or at any other time for the filing of findings of fact or conclusions of law; there were no amendments proposed to any part of the opinion and the only exception filed was that the evidence did not support the findings of fact or the judgment. There was no attempt to take advantage of the provisions of the judicature act permitting the presentation in this court of the question of whether the findings were against the clear weight of the evidence (section 12587, 3 Comp. Laws 1915), nor is there any such assignment of error. We have had occasion to consider the effect of the failure to follow these provisions many times. Among the numerous cases see *Messer* v. *Dornbos,* 210 Mich. 46; *Marshall & Ilsley's Bank* v. *Mooney,* 205 Mich. 518; *Engel* v. *Tate,* 203 Mich. 679; *Cascarelli* v. *Railroad Co.,* 202 Mich. 304; *Federal Audit Co.* v. *Sawyer,* 196 Mich. 566; *Walker* v. *Village of Brooklyn,* 184 Mich. 520; *Moore* v. *Supply Co.,* 171 Mich. 400.

But we are inclined to give this record the most liberal construction possible. Treating the opinion as a finding of fact and law duly excepted to we may consider whether the evidence supports the judgment. *Oscar Daniels Co.* v. *City of Sault Ste. Marie,* 208 Mich. 363. Turning to the testimony of the plaintiff and that of Mr. Wyman we find an abundance of evidence to sustain the finding. We quote a few excerpts from that given by plaintiff:

"I had never taken up the matter of a settlement with Wyman at the time of the fire. I will tell you that during all the time—I kept urging all the time. You see, the hay was sold—there was no question about that—the hay was sold and the only thing that I kept pushing him on, was getting it out, getting the hay shipped. I wanted it shipped out and the money got in so that we might have a settlement. * * *

"They paid me for all the stuff shipped out. I did not write to Chatterton & Son in connection with the deal. I went over there and talked with them per-

sonally once or twice, because here was the idea with me:—I had sold it and the sooner I got my money out of it, the better it was for me, because I could use the money.

"*Q.* The terms of your deal with them were such that you sold them the hay as it rested in your warehouse?

"*A.* Yes. * * * I have never asked Chatterton & Son since the fire to pay me for the hay which they bought of me. I made delivery to them of the hay just as it stood in the Clare warehouse and the other warehouses and it was up to them to do what they wanted with it. They were in control of the hay through their Mr. Wyman. * * *

"*Q.* Why did you wait—if you had sold all this hay to Chatterton & Son, why did you wait until they shipped it out until you got your pay?

"*A.* I tried to get my pay, but I couldn't get nothing. I tried to get them to make a settlement as to the full amount of it and get it cleaned up.

"*Q.* You felt they owed you for the full amount whether they shipped it out or whether they didn't?

"*A.* Yes, I feel that way.

"*Mr. Lacy: Q.* If they owe you that amount, John, what would they owe that to you for?

"*A.* What would they owe that to me for? For the hay; they wouldn't pay for it only as they shipped it out.

"*Q.* Then their hay, and you had some money coming from it?

"*A.* That is the way I felt all the time."

We also quote a couple of excerpts from the testimony given by Mr. Wyman:

"*Q.* They bought it all but they would only pay for it as it was loaded out of the building?

"*A.* Yes. * * *

"*Q.* You understood it to be an out and out sale to Chatterton & Son—with the exception that they would not pay for it until it was actually loaded on the cars?

"*A.* Yes."

There is testimony which may be said to shade and vary the effect of these excerpts. We have not quoted

it as we are not passing on the weight of the evidence, but the tendency of all the testimony given by plaintiff and Mr. Wyman is that the sale of the hay to Chatterton & Son was a complete sale, that the title had passed on to them, that Chatterton & Son owed plaintiff for all the hay bought including that destroyed by the fire; in short, that it was the hay of Chatterton & Son that was destroyed by fire and not that of the plaintiff. Instead of there being no evidence to support the conclusion of the trial judge, there is an abundance of it.

The judgment must be affirmed.

MOORE, C. J., and STEERE, BROOKE, STONE, CLARK, and SHARPE, JJ., concurred. BIRD, J., did not sit.