## MICHIGAN CENTRAL RAILROAD CO. *v.* MORGAN.

1. ATTORNEY AND CLIENT—ATTORNEYS SHOULD FAMILIARIZE THEMSELVES WITH COURT RULES.

   Practicing attorneys owe it to their clients to familiarize themselves with court rules and the construction placed on them by the Supreme Court.

2. APPEAL AND ERROR — ASSIGNMENTS OF ERROR CONSIDERED ALTHOUGH COURT RULE NOT COMPLIED WITH.

   Where assignments of error fairly present the question of the construction of a statute, the Supreme Court will review same, although no findings of fact or conclusions of law were requested or filed as required by Circuit Court Rule No. 45.

3. SALES—DEFINITION.

   A sale of goods is an agreement whereby the seller transfers the property in goods to the buyer for a consideration called the price.

---

On applicability of statute relating to stock of goods in bulk to transfer in payment of a creditor, see note in 12 L. R. A. (N. S.) 174.

On the question as to whether chattel mortgage is a sale within the meaning of bulk sales law, see note in 12 L. R. A. (N. S.) 178.

On applicability of bulk sales law to chattel mortgages and sales thereunder, see notes in 9 A. L. R. 473; 14 A. L. R. 753.

4. Fraudulent Conveyances—Bulk Sales Law—Chattel Mort-
gage Not a Sale.

A chattel mortgage is not a sale within the meaning of
the bulk sales act (2 Comp. Laws 1915, § 6346 *et seq.*).

5. Same—Transfer of Goods Held a Sale Within Bulk Sales
Act.

The transfer by bill of sale of a stock of coal and ac-
counts receivable in full settlement of transferee's claims
against transferors was a "sale and transfer" within the
provisions of the bulk sales act.

Error to Wayne; Goff (John H.), J.    Submitted
May 1, 1924.    (Docket No. 27.)    Decided June 2,
1924.

Garnishment proceedings by the Michigan Central
Railroad Company against Frederick R. Morgan and
others, principals, and the Seiler Coal Company and
others, garnishee defendants.    Judgment for plaintiff.
Garnishee defendants bring error.    Affirmed.

*Atkinson & Schweikart* and *Miller, Canfield, Pad-
dock & Stone,* for appellants.

*John J. Danhof, Jr. (Duncan C. McCrea,* of coun-
sel), for appellee.

SHARPE, J.    The garnishee defendants by writ of
error review a judgment rendered against them by
reason of a sale of personal property made to them by
the principal defendants without complying with the
provisions of the bulk sales act.

A preliminary question is presented.    The trial was
had before the court without a jury.    No findings of
fact or conclusions of law were requested or filed.    It
is urged by appellee that "there is no question before
this court to decide."    We have on many occasions
considered the effect of a failure to comply with
Circuit Court Rule No. 45.    In *Haines* v. *Saviers,* 93
Mich. 440 (decided in 1892), this court refused to

consider errors alleged to have been committed by the trial court where the rule had not been complied with. A number of cases are there cited in support of the holding. Later cases will be found collected in *McDonell* v. *Union Trust Co.*, 139 Mich. 386; *Simon* v. *Zarevich*, 213 Mich. 662; and *Gervickes* v. *Assurance Co.*, 222 Mich. 103. Practicing attorneys owe it to their clients to familiarize themselves with the rules and the construction placed on them by this court. We are at all times loath to decline to consider alleged errors which appear meritorious because not properly presented by the record. We have, however, on several occasions considered an assignment of error in such cases based on the claim that there was no competent evidence to support the judgment. *Oscar Daniels Co.* v. *City of Sault Ste. Marie*, 208 Mich. 363; *Messer* v. *Dornbos*, 210 Mich. 46; *Jackson* v. *Insurance Co.*, 211 Mich. 378. In view of the fact that the construction of a statute is involved in this case, we have concluded to do so. The assignments, we think, fairly present this question.

There is no dispute about the facts. The Morgan Wright Coal Company, the principal defendants, were engaged in the retail coal business in Detroit. In January, 1922, they were indebted to the garnishee defendants, Seiler Coal Company, Raleigh Smokeless Fuel Company, and Webster I. Sallee, in sums aggregating more than $20,000. The Raleigh Smokeless Fuel Company commenced suit by attachment, and the coal in the yards of the principal defendants was levied upon thereunder. On January 19th, an agreement was entered into between the principal defendants and the three garnishee defendants wherein the principal defendants "agreed to transfer by bill of sale" to these garnishee defendants the coal levied upon and "certain accounts receivable" (lists of same being attached) in full settlement of their claims against them, and as further consideration agreed to

pay freight charges of the plaintiff, amounting to $4,256.68, and the rent then due on the premises occupied by them. A bill of sale of the coal was executed and delivered on the same day. The vendees took possession and placed the garnishee defendant Roy G. Peters, doing business as the Allen P. Coal Company, in charge thereof to sell the same. The proceeds thereof amounted to $17,660. A part of this sum has been paid to the vendees, and a part is yet retained by Mr. Peters. On February 1st, plaintiff began suit against the principal defendants, and recovered a judgment of $7,119.02. A writ of garnishment was served on the garnishee defendants and disclosures filed. On an issue framed, the proofs disclosed the facts stated.

The question presented is whether the transfer made by the principal defendants of their stock of coal and accounts was a "sale and transfer" within the provisions of the bulk sales act (2 Comp. Laws 1915, § 6346 *et seq.*). Section 6346 reads, in part, as follows:

"The sale, transfer or assignment, in bulk, of any part or the whole of a stock of merchandise, or merchandise and the fixtures pertaining to the conducting of said business, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the business of the seller, transferor or assignor, shall be void as against the creditors of the seller"—

unless the seller shall comply with the provisions of the statute as to notice to creditors. No claim is made that such notice was given.

The word "sale," as applied to the transfer of title to personal property, has been many times defined by this court. *Western Massachusetts Ins. Co.* v. *Riker*, 10 Mich. 279; *Huff* v. *Hall*, 56 Mich. 456. In the uniform sales act (3 Comp. Laws 1915, § 11832), it is thus defined:

"A sale of goods is an agreement whereby the seller

transfers the property in goods to the buyer for a consideration called the price."

This definition is that used in 3 Bouvier's Law Dictionary, p. 2983. We must assume that the legislature had this well-understood meaning in mind when the bulk sales act was enacted. *Edward* v. *Ioor,* 205 Mich. 617, 623 (15 A. L. R. 256). As so defined, it clearly covers the transfer of the property here made.

It is urged that the statute does not prevent a debtor from preferring particular creditors. *Brown, Eager & Hull Co.* v. *Mosier,* 187 Mich. 55. A chattel mortgage is not a sale within the meaning of the act. *Hannah & Hogg* v. *Richter Brewing Co.,* 149 Mich. 220 (12 L. R. A. [N. S.] 178, 12 Ann. Cas. 344, 119 Am. St. Rep. 674) ; *Symons Bros. & Co.* v. *Brink,* 194 Mich. 389; *American Steel & Wire Co.* v. *Dedrick,* 196 Mich. 731. The transfer was not an assignment for the benefit of creditors generally. That it was accepted in full satisfaction of the indebtedness due to the three garnishee defendants did not relieve from a compliance with the provisions of the act. In *National Grocer Co.* v. *Plotler,* 167 Mich. 626, such a claim was made as to that part of the consideration represented by the indebtedness of the vendee, and it was held that the sale was absolutely void as against creditors. A similar question was discussed in *Gallus* v. *Elmer,* 193 Mass. 107 (78 N. E. 772, 8 Ann. Cas. 1067), commented on in *Symons Bros. & Co.* v. *Brink, supra,* wherein it was held that the particular mode in which the consideration is paid upon a sale is immaterial. See, also, *Sampson* v. *Brandon Grocery Co.,* 127 Ga. 454 (56 S. E. 488, 9 Ann. Cas. 331) ; 12 L. R. A. (N. S.) 174, note.

Counsel rely on *Des Moines Packing Co.* v. *Uncaphor,* 174 Iowa, 39 (156 N. W. 171), and *Gorman* v. *Hellberg,* 190 Iowa, 728 (180 N. W. 732). When

the *Uncaphor Case* was decided, the statute in Iowa differed from ours in that such a sale was not declared to be void as to creditors but such sales "will be presumed to be fraudulent and void." This distinction was pointed out in that case, where reference was made to the holding in *Gallus* v. *Elmer, supra,* by the Massachusetts court. The statute as amended to read substantially as ours was before the court in the latter of these cases. In that case the stock was taken at an actual invoice price with the agreement that the purchase price over and above the indebtedness should be paid to the seller. It was held that the sale was not a violation of the act. This holding is in direct conflict with *National Grocer Co.* v. *Plotler, supra.* We feel constrained to hold that the transfer of title here made was a "sale" within the meaning of that word as used in our act.

It is urged that a judgment should not have been rendered against the defendant Peters. We do not feel at liberty to determine that question upon the record before us.

The judgment is affirmed.

CLARK, C. J., and McDONALD, BIRD, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.